**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated, | Case No. 2:20-cv-15081-CCC-AME |
| *Plaintiffs,* | CLASS ACTION |
| | Motion Day: June 6, 2022 |
| v. | Hon. Claire C. Cecchi |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.* | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING  SETTLEMENT AND <u>AUTHORIZING DISSEMINATION OF NOTICE OF SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 3

     A.    Procedural History ..................................................................................... 3

     B.    Settlement Negotiations ............................................................................ 4

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .............. 4

     A.    Standards for Preliminary Approval ......................................................... 4

     B.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class. 6

     C.    The Settlement Was Negotiated at Arm's Length Between Experienced Counsel 6

     D.    The Relief Provided to the Settlement Class is Adequate .................................... 7

          1.    The *Girsh* Factors Support Preliminary Approval ..................................... 7

          2.    The Proposed Method of Distributing Relief is Effective ......................... 10

          3.    Lead Counsel Will Seek Reasonable Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff.................................................................. 10

          4.    The Parties Have Agreed to a Standard Side Agreement Regarding Opt-Outs .............................................................................................................. 11

     E.    There Was No Preferential Treatment; The Plan is Designed to Treat Settlement Class Members Equally .......................................................................... 11

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS ................. 12

     A.    Numerosity................................................................................................ 12

     B.    Commonality.............................................................................................. 13

     C.    Typicality .................................................................................................. 14

     D.    Adequacy .................................................................................................. 15

          1.    Adequacy of the Proposed Class Representative...................................... 15

          2.    Adequacy of the Proposed Class Counsel ................................................ 15

     E.    Predominance and Superiority.................................................................. 16

V.      THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(c)(2)(B) ................................................................................................................ 18

VI.     PROPOSED SCHEDULE OF EVENTS ........................................................................ 20

VII.    CONCLUSION ............................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. PixarBio Corp., et al.*,
Case No. 2:17-cv-00496 (D.N.J.) ............................................................................. 20

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................. 12, 17

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ......................................................................................... 13

*Baker v. SeaWorld Ent., Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ............ 20

*Clark v. Bally's Park Place, Inc.*,
298 F.R.D. 188 (D.N.J. 2014) .................................................................................. 17

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ..................................................................................... 4

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..................................................................................... 7

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................... 11

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ..................................................................................... 14

*Hull v. Global Digital Solutions, Inc., et al*,
Case No. 3:16-cv-05153 (D.N.J.) ............................................................................. 20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................. 20

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) .................................................................................. 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..................................................................................... 9

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................... 10

iii

*In re China Sunergy Sec. Litig.*,
No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................... 9

*In re Cigna Corp Sec. Litig.*,
No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ........................................ 13

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ..................................................................................... 11

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008) ............................................................................... 13, 14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ....................................................................................... 6, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................... 9

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................. 7, 14

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ................................................................................ 8

*In re Nat. Football League Players Concussion Inj. Litig.*,
775 F.3d 570 (3d Cir. 2014) ....................................................................................... 5, 12

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...................................... 4, 8, 9

*In re Ocean Power Techs., Inc., Sec. Litig.*,
No. 14-3799 (FLW) (LHG), 2016 WL 7638464 (D.N.J. June 7, 2016) .................................. 11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... 10

*In re Par Pharm. Sec. Litig.*,
No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ..................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................................... 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .................................................................................... 15, 20

iv

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
  962 F. Supp. 450 (D.N.J. 1997) ................................................................... 9, 13

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ......................... 7

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ............................................................................. 13

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  233 F.R.D. 421 (E.D. Pa. 2006) ....................................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................................... 4

*Jones v. Com. Bancorp, Inc.*,
  No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) ............................ 5, 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................. 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ......................................................................................... 20

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) .............................................................................. 14

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017) ............................... 10

*Pepe v. Cocrystal Pharma, Inc., et al.*,
  Case No. 2:18-cv-14901 (D.N.J.) ...................................................................... 20

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................... 18

*Shapiro v. All. MMA, Inc.*,
  No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ...... 15, 16

*Singleton v. First Student Mgmt. LLC*,
  No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ....................... 7

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
  323 F.3d 32 (1st Cir. 2003) .......................................................................... 17, 18

*Smith v. Suprema Specialties, Inc.*,
  No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007) ........................ 13, 17, 18

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) .............................................................................................. 13

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .............................................................................................. 14

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993) ...................................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................................... 14

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002) ............................................................................................ 17

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................. 8, 16

## Statutes

15 U.S.C. § 78u-4(a) ................................................................................................ 11, 19, 20

## Rules

Fed. R. Civ. P. 23 ............................................................................................................ passim

## Other Authorities

7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ...................... 4

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986) .. 17

Manual for Complex Litigation § 21.632 (4th ed. 2004) ............................................................. 5

Lead Plaintiff Mark Spanier and Named Plaintiff Marissa Weeresinghe (collectively, "Plaintiffs") respectfully submit this memorandum in support of their unopposed Motion For Entry of Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement.[1] Plaintiffs also request that the Court schedule a final approval hearing ("Settlement Fairness Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds ("Plan"), and the request for attorneys' fees, reimbursement of expenses, and Award to Plaintiffs.

## I.      INTRODUCTION

The Parties have reached a settlement to resolve this putative securities class action for $1.75 million ("Settlement"). Plaintiffs now seek preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable* - in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Settlement Class, soliciting claims on, objections to, and exclusions from the Settlement. With the Settlement Class Members' reactions in hand, the Court will determine at the Settlement Fairness Hearing whether to grant final approval of the Settlement.

This is a particularly risky case, as there were substantial questions concerning the materiality of the alleged misrepresentations and Defendants' scienter, and even more critically, there were arguably no provable damages. Indeed, unlike the vast majority of securities class actions, there was only one movant for lead plaintiff. Nevertheless, Plaintiffs and Lead Counsel

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement dated April 1, 2022, filed concurrently herewith ("Stipulation").

vigorously prosecuted this Action and obtained this $1.75 million Settlement following extensive and hard-fought negotiations with Defendants. The Settlement recovers approximately 9.7% of the $18 million in *maximum* damages *potentially* available in this case. However, that was Plaintiffs' best-case scenario. There were strong arguments that, if accepted, would have reduced Plaintiffs' damages to, at most, approximately $10 million, which would equate to a recovery of 17.5%. A recovery in the range of 9.7% to 17.5% is well within the range of recoveries that courts have found to be fair, reasonable, and adequate. Here, Defendants have also asserted colorable arguments that could potentially reduce damages to zero.

The Court must also preliminarily certify a settlement class to allow for notice to be distributed to the Settlement Class. Securities class actions are particularly well-suited for class treatment, and this case is no outlier. The Court should make a preliminary determination that class treatment is appropriate, which will allow for the dissemination of notice to the Settlement Class. The Court need not decide at this stage whether to finally certify a settlement class.

Lastly, the Court must approve how notice of the settlement will be communicated to Settlement Class Members ("Notice Plan") and the specific proposed documents that Plaintiffs will use to communicate notice – the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, "Notice"). Proposed versions of the various forms of the Notice are attached respectively as Exhibits A-1, A-3, and A-4 to the Stipulation.[2] The Notice Plan and the Notice each closely track the forms and methods routinely used to communicate notice in securities class actions, and

---

[2] Exhibit A-2 to the Stipulation is the Proof of Claim and Release Form ("Claim Form").

each satisfy Fed. R. Civ. P. 23, including its recent amendments. For these reasons the Court should approve the Notice Plan and Notice.

## II.    BACKGROUND

### A.    Procedural History

This Action began on October 27, 2020, when Mark Spanier filed a putative securities fraud class action complaint in this Court against Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), BMW (US) Holding Corp. ("BMW US"), Norbert Reithofer, Oliver Zipse, Nicolas Peter, Harald Krüger, Bernhard Kuhnt, and Ludwig Willisch alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Dkt. No. 1.

On December 28, 2020, Mark Spanier moved the Court for appointment as Lead Plaintiff pursuant to the Exchange Act and the Private Securities Reform Litigation Act of 1995 ("PLSRA"). Dkt. No. 11. In the same motion, Mark Spanier also sought approval of his selection of counsel, The Rosen Law Firm, P.A., as Lead Counsel. *Id.* There were no other movants.

On July 22, 2021, the Court appointed Mark Spanier as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 20.

On September 24, 2021, Mark Spanier and Named Plaintiff Marissa Weeresinghe filed the Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint"). Dkt. No. 30. The Complaint alleged claims under Section 10(b) and 20(a) of the Exchange Act against BMW AG, BMW NA, Norbert Reithofer, Karl-Ludwig Kley, Oliver Zipse, Nicolas Peter, Harald Krüger, Bernhard Kuhnt, and Ludwig Willisch.[3]

---

[3] The Complaint dropped BMW US as a defendant.

On November 30, 2021, Plaintiffs voluntarily dismissed Oliver Zipse, Harald Kruger, Norbert Reithofer, Karl-Ludwig Kley, Nicholas Peter, Bernhard Kuhnt, and Ludwig Willisch from the Action. Dkt. No. 37.

### B.    Settlement Negotiations

In November of 2021, the Parties, through their respective counsel, began settlement discussions. The settlement negotiations continued until February 2, 2022, when the Parties reached an agreement in principle, which the Parties memorialized in a Memorandum of Understanding ("MOU").

On February 3, 2022, the Parties filed a Notice of Settlement to inform the Court of the Parties' agreement in principle, and requested that all deadlines and proceedings be stayed pending the execution of the Parties' settlement agreement.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Standards for Preliminary Approval

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. This is particularly true for class actions involving complex litigation and securities matters. 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more"); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *28 (D.N.J. Nov. 15,

4

2016) (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("Securities class action litigation is 'notably difficult and notoriously uncertain'")).[4]

Settlement of this putative class action requires the Court's approval. Fed. R. Civ. P. 23(e). Courts typically conduct a preliminary assessment of the settlement before directing notice, a practice endorsed by the Third Circuit. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570 (3d Cir. 2014) ("*NFL Players*") (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)); *see also* 4 H. Newberg & A. Conte, *Newberg on Class Action* (4th ed. 2002), at ¶ 11.25, p. 38. "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Com. Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007);

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[4] Internal citations and quotations are omitted and emphasis is added unless otherwise indicated.

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

   (D)    the proposal treats class members equitably relative to each other

## B.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiffs have diligently prosecuted this Action on the Settlement Class's behalf. Plaintiffs thoroughly investigated the facts to draft a detailed amended complaint, which required Plaintiffs to, among other things, retain a private investigator to interview witnesses and hire an economics expert to assess and analyze damages.

Plaintiffs then engaged in hard-fought settlement discussions with Defendants, who were zealously represented by experienced practitioners from the law firms of Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden Arps") and Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"). The negotiations continued for approximately two months before the Parties reached their agreement in principle.

## C.    The Settlement Was Negotiated at Arm's Length Between Experienced Counsel

Courts apply an initial presumption of fairness if the proposed settlement was reached through arm's length negotiation. *Jones*, 2007 WL 2085357, at *2 (quoting Manual for Complex Litigation, Third Ed., § 30.42 (1995)). Here, the settlement was negotiated at arm's length over a two-month period by the Parties' respective counsel, each of whom has extensive experience litigating securities class actions. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) (presumption of fairness if settlement negotiations conducted at arm's length by experienced counsel).

**D.** **The Relief Provided to the Settlement Class is Adequate**

**1.** **The *Girsh* Factors Support Preliminary Approval**

In determining whether to grant final approval of class action settlements, courts in the

Third Circuit consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J.

Aug. 6, 2014) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval

factors also help guide a court's preliminary assessments of class action settlements. *Id.*

The first *Girsh* factor, the complexity, expense and likely duration of the litigation,

supports approval of the Settlement. "Large class actions alleging securities fraud" are "inherently

complicated." *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000); *In re*

*Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *17 (D.N.J.

Dec. 9, 2008) ("Federal securities class actions by definition involve complicated issues of law

and fact."). This case is no exception. This litigation involved allegations of fraud involving several

complicated schemes perpetuated by BMW AG and BMW NA employees located in the U.S. and

Germany. Securities class actions such as this one are notoriously complex and expensive to

litigate as they require extensive investigations, discovery, and the retention of experts to opine on

several topics such as on market efficiency, loss causation, and damages.

7

The third factor, the stage of the proceedings, also supports approval.[5] While discovery was stayed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "[c]ourts in this Circuit frequently approve class action settlement despite the absence of formal discovery." *Ocean Power,* 2016 WL 6778218, at \*17 (citing cases); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at \*13 (D.N.J. Nov. 10, 2016) (same).

At the time of settlement, Plaintiffs were very knowledgeable about the strengths and weakness of their case as they conducted an extensive investigation prior to filing the amended complaint, including among other things, a review of BMW AG and BMW NA's public filings, announcements, and earnings call transcripts. Plaintiffs also retained a private investigator to identify and interview witnesses and former employees of BMW AG and BMW NA. Additionally, Plaintiffs consulted with an economics expert regarding the range of provable damages. After the These steps gave Plaintiffs a clear and realistic understanding of the merits of the Action as they entered settlement negotiations.

The fourth, fifth, and sixth *Girsh* factors – the risks of establishing liability, establishing damages, and maintaining the class action through the trial – also support approval. At the time that the Settlement was reached, Defendants were poised to file their motion to dismiss. While Plaintiffs believe their claims to be meritorious, Plaintiffs recognize that Defendants have compelling arguments concerning liability, including strong arguments against scienter and materiality. There is no guarantee that Plaintiffs would be able to defeat Defendants' motion to dismiss, let alone prevail at summary judgment and trial. *See In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004) (proving liability, particularly scienter, "would have been

---

[5] Before notice of a settlement is disseminated, it is not possible to gauge the reaction of the class (the second *Girsh* factor). Plaintiffs, however, support the Settlement.

very difficult" and based on risks and contingencies, settlement is reasonable in light of risks involved in establishing liability); *Ocean Power,* 2016 WL 6778218, at *19-20 (recognizing the difficulty of establishing liability in securities class action and the additional risk of establishing damages); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *8 (S.D.N.Y. Dec. 19, 2014) ("Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.").

Additionally, proving damages is a significant hurdle, as Defendants assert that neither corrective disclosure date resulted in a statistically significant drop in the price of BMW AG ADRs and F shares. If Defendants' arguments are accepted, damages in this case would be zero.  This would turn into the proverbial "battle of the experts" with no guarantee who will prevail. A "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts." *In re Prudential Insurance Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997),  *aff'd,* 148 F.3d 283 (3d Cir. 1998). The Settlement provides a favorable and immediate result for the Settlement Class while avoiding significant risks of establishing liability and damages.

The seventh, eighth, and ninth *Girsh* factors – the ability of the defendants to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation – also support approval. While Defendants are believed to be solvent, Defendants' ability to pay is irrelevant if Plaintiffs cannot survive a motion to dismiss or summary judgment. Here, the $1.75 million Settlement confers an immediate and guaranteed benefit on Settlement Class Members, recovering 9.7% to 17.5% of damages, which compares favorably to settlements in similar cases. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011

9

WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving settlement recovering 7% of damages); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017) (approving settlement recovery 10% of damages).

### 2. The Proposed Method of Distributing Relief is Effective

As demonstrated below in Section V, the proposed form and method of notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how the Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Plaintiffs' damages consultant.

### 3. Lead Counsel Will Seek Reasonable Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As outlined in the proposed Notice, Lead Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Amount and recover litigation expenses in an amount not to exceed $40,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch.*

10

*Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). Further, as explained in the proposed Notice, Plaintiffs intend to request an amount not to exceed $7,000 in total pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class.

### 4.    The Parties Have Agreed to a Standard Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement that provides Defendants with the option to terminate the Settlement if the number of opt-outs reach a certain confidential threshold. Stipulation ¶2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### E.    There Was No Preferential Treatment; The Plan is Designed to Treat Settlement Class Members Equally

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *See In re Ocean Power Techs., Inc., Sec. Litig.*, No. 14-3799 (FLW) (LHG), 2016 WL 7638464, at *1 (D.N.J. June 7, 2016). The Long Notice sets out the Plan, which explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan provides that each Settlement Class Member will receive the same per-share amount based on when they purchased or sold their BMW AG ADR or F share. Plaintiffs and all other Settlement Class Members will receive their payments pursuant to the same formula.

11

IV.    **THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS IN ORDER TO PROVIDE NOTICE TO SETTLEMENT CLASS MEMBERS**

This Court should preliminarily certify the proposed Settlement Class for the purposes of the Settlement. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Fed. R. Civ. P. 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *NFL Players*, 775 F.3d at 574. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority"). The Action meets each of these requirements.

A.    **Numerosity**

The numerosity requirement is satisfied where a class is so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). "To meet the numerosity requirement, class

12

representatives must demonstrate only that 'common sense' suggests that it would be difficult or inconvenient to join all class members." *Prudential,* 962 F. Supp. at 510. Indeed, numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Although the exact number of class members is not precisely known, courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006) (quoting *Sinay et al. v. Lepore & Assocs. et al.,* No. 99-2231, slip op., at 8 (D.N.J. Feb. 14, 2001)); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008) (same); *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *4 (D.N.J. Apr. 23, 2007) (in "a securities action, a court may infer that the numerosity requirement is met from allegations of the number of transactions during the relevant period, even if the number of class members is not precisely known.").

Here, BMW AG ADRs and F shares were publicly traded on the OTC market with millions of shares outstanding at the end of the Class Period. The numerosity requirement is easily satisfied here.

### B.    Commonality

Commonality does not require that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) (noting that "only one question of law or fact in common is necessary"). The common issue "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

13

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Commonality is satisfied where the plaintiffs allege a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in Defendants' public filings and statements. *Sullivan*, 667 F.3d at 336; *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002); *Ikon*, 194 F.R.D. at 176; *In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). Securities class actions are particularly well suited to class treatment. *DVI*, 249 F.R.D. at 201 ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock."). This Action asserts a common course of misconduct by Defendants, thus commonality is satisfied.

### C.    Typicality

If "the claims of the named plaintiffs and putative class members involve the same conduct by the  defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). "Factual differences will not render a claim atypical if the claim  arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*,  980 F.2d 912, 923 (3d Cir. 1992).

Here, Plaintiffs' claims are typical of those of the Settlement Class. Plaintiffs allege that they purchased BMW AG ADRs and F shares at prices that were artificially inflated by Defendants' false and misleading statements, and they were harmed when the truth emerged and the artificial inflation dissipated. Plaintiffs' claims stand or fall with those of the Settlement Class. Thus, they are typical.

14

**D.    Adequacy**

The adequacy requirement has traditionally entailed a two-pronged inquiry: the plaintiff's interests must be sufficiently aligned with the interests of the absentee class members and the plaintiff's counsel must be qualified to represent the  class. *Gen. Motors*, 55 F.3d at 800. Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representative

A proposed class representative is "adequate" if their interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998); *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *5 (D.N.J. June 28, 2018). Plaintiffs, who are the proposed class representatives, have no interests that are antagonistic to those of the proposed Settlement Class, and they are subject to no unique defenses. Plaintiffs have remained engaged throughout the litigation and settlement process, communicating regularly with counsel, and have dutifully represented the Settlement Class. Accordingly, Plaintiffs are adequate Class Representatives.

### 2.    Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to independently assess the adequacy of proposed class counsel. Fed. R. Civ. P. 23(g). To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Shapiro*, 2018 WL 3158812, at *5.

Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), have extensive experience prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country, including many in the District of New Jersey. *See* Dkt. No. 11-7 (Rosen

15

Law résumé). Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See, e.g., Roka*, 2016 WL 6661336, at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Shapiro*, 2018 WL 3158812, at *5 (recognizing Rosen Law's successful prosecution of many securities class actions); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) (["Rosen Law"] is 'highly qualified [and] experienced' in securities class actions")

The Settlement was only after Lead Counsel conducted a comprehensive investigation that resulted in the filing of the detailed amended complaint. During the course of the investigation, Lead Counsel worked with a private investigator to identify and interview witnesses, and engaged an economics expert to assess the range of damages under different scenarios. Lead Counsel also thoroughly reviewed Defendants' public filings, announcements, and call transcripts. Even after settlement discussions commenced, an agreement was not reached until two months of hard-fought and frank negotiations.  Lead Counsel drew on their extensive experience litigating similar types of securities class actions to evaluate the strengths and weaknesses of the claims at issue and assess the value of the Settlement. Accordingly, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E.    Predominance and Superiority

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Here, Plaintiffs seek to certify a class under Rule 23(b)(3). *Id.* To certify a class under Rule 23(b)(3), the Court must find that: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Plaintiffs satisfy both the predominance and superiority criteria of Rule 23(b)(3).

"The focus of the predominance inquiry is on liability, not damages." *Smith,* 2007 WL 1217980, at \*9 (citing cases); *Clark v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 200–01 (D.N.J. 2014) (the amount of damages may vary among the class members, but these calculations are "straightforward").

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Fed. R. Civ. P. 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd,* 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification[.]"). Here, common questions predominate in that Defendants' alleged omissions or misrepresentations provide the basis for liability as to all potential class members. Additionally, damages will be calculated on a class-wide basis. Thus, as in many securities fraud class actions, the predominance requirement is "readily met." *Amchem Products, Inc.*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)   the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

17

Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. The District of New Jersey is an appropriate forum because Defendant BMW NA is headquartered in New Jersey. Plaintiffs foresee no difficulties in managing this Settlement Class for the purposes of settlement.

Class actions are vastly superior to individual actions with respect to securities fraud claims. Without class actions, defrauded investors whose losses do not run into several millions of dollars would have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"); *Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."). Moreover, "class actions are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws." *Smith*, 2007 WL 1217980, at *20.

Thus, a class action is the superior method of adjudication. Solely for the purposes of settlement Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). The Court should preliminarily determine that class treatment is appropriate to permit notice to the Settlement Class.

## V.    THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS SATISFIES RULE 23(c)(2)(B)

The proposed Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a claim; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary

18

information to examine Court records. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center.[6]

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by either: (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses[7] or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail to

---

[6] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last accessed: April 28, 2022).

[7] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an example of an electronic method of notice. Providing electronic notice to class members in which an email address can be obtained will reduce administration costs and ultimately benefit the class. This Court and others in this District have permitted similar electronic notice. *See, e.g., Allen v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (Cecchi, J.) (Dkt. No. 135).*Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J.) (McNulty, J.) (Dkt. No. 76); *In re Akers Biosciences, Inc., Sec. Litig.,* Case No. 18-cv-10521 (D.N.J.) (Dkt. No. 40); *Hull v. Global Digital Solutions, Inc., et al.,* Case No. 16-cv-5153 (D.N.J.) (Dkt. No. 65).

19

Settlement Class Members who can be identified with reasonable effort. Also, after entry of the Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's website. Additionally, Summary Notice will be published electronically once over a national newswire.

The proposed Notice and Notice Plan are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *Allen v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (Cecchi, J.) (Dkt. No. 135) (same); *Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J.) (Dkt. No. 76) (same); *Hull v. Global Digital Solutions, Inc., et al,* Case No. 3:16-cv-05153 (D.N.J.) (Dkt. No. 65) (same).

The form and manner of providing Notice to the Settlement Class Members here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice "provide[s] all of the required information concerning the class members' right[s] and obligations under the settlement." *Prudential Ins.*, 148 F.3d at 328.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the proposed Preliminary Approval Order filed herewith:

20

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice and/or mailing Postcard Notice; Creating website with Stipulation, Long Notice, and Claim Form | No later than 28 calendar days after the entry of the Preliminary Approval Order (¶¶14, 16) |
| Publication of the Summary Notice | No later than 28 calendar days after entry of the Preliminary Approval Order (¶15) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | No later than 28 calendar days prior to the Settlement Hearing. (¶29) |
| Submission deadline for requests for exclusion | No later than 21 calendar days prior to the Settlement Hearing (¶22) |
| Submission deadline for objections | No later than 21 calendar days prior to the Settlement Hearing (¶26) |
| Submission deadline for Claim Forms | No later than 21 calendar days prior to the Settlement Hearing (¶20) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days prior to the Settlement Hearing (¶30) |
| Dated for the Settlement Fairness Hearing | Approximately 120 days after entry of the Preliminary Approval Order |

The Court should schedule the Settlement Fairness Hearing for a date that is approximately 120 calendar days after entering the Preliminary Approval Order, which will allow enough time for Lead Counsel to: (i) email the Summary Notice and/or mail the Postcard Notice; (ii) post the Stipulation, Preliminary Approval Order, Notice and Claim Form on the Claims Administrator's website; (iii) publish the Summary Notice; (iv) file a motion in support of final approval of the Settlement and the Plan; (v) file a motion for attorneys' fees, reimbursement of expenses, and Awards to Plaintiffs; and (vi) file a reply in support of final approval. Additionally, holding the Settlement Hearing at least 100 days after entry of the Preliminary Approval Order will allow Settlement Class Members enough time to submit their Claim Forms, exclude themselves, or submit objections to the Settlement.

21

## VII.    CONCLUSION

The Court need not determine at this stage whether the Settlement is fair, reasonable, and adequate, or whether class treatment is appropriate. Those determinations are for the final approval hearing. Rather, this motion asks the Court to commence the settlement process.

This Settlement results from extensive arm's length negotiation guided by an experienced mediator. Given the considerable risks of lesser or no recovery for Settlement Class Members if the litigation were to continue, the Settlement is a fair, reasonable, and adequate result. The Court should grant preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate for the Action, approve the form and manner of notice, and set a date for the Settlement Fairness Hearing.

Dated: April 28, 2022                                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Yu Shi (*admitted Pro Hac Vice*)
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: yshi@rosenlegal.com

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen