## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated,

         *Plaintiffs*,

v.

BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.*,

         *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:20-cv-15081-CCC-MF

**ECF Case**
**Electronically Filed**

## DEFENDANTS' JOINT MEMORANDUM OF
## LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

| | |
|---|---|
| Alan E. Schoenfeld | Scott D. Musoff |
| Michael G. Bongiorno (*pro hac vice*) | Jay B. Kasner (*pro hac vice*) |
| WILMER CUTLER PICKERING | Shaud G. Tavakoli (*pro hac vice*) |
|   HALE AND DORR LLP | SKADDEN, ARPS, SLATE, |
| 7 World Trade Center |   MEAGHER & FLOM LLP |
| 250 Greenwich Street | One Manhattan West |
| New York, New York 10007 | New York, New York 10001 |
| (212) 230-8800 | (212) 735-3000 |
| | |
| *Attorneys for Defendant BMW of* | *Attorneys for Defendant Bayerische* |
|   *North America, LLC* |   *Motoren Werke AG* |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ..............................................................................1

BACKGROUND .....................................................................................................4

    A.    The Parties ...................................................................................4

    B.    BMW NA Reports Retail Sales Figures .......................................5

    C.    BMW NA Discloses and Widespread Public Reports Confirm Before and During the Class Period that BMW NA Reported Sales Figures Included Dealer Purchases for Demonstrator and Loaner Vehicles ................................................................................6

    D.    The SEC Commences an Investigation and BMW AG and BMW NA Enter Into a Consent Agreement in Which They Do Not Admit Liability or the SEC's Factual Findings ...........................7

    E.    Plaintiffs File This Lawsuit Based on the SEC Order .........................8

    F.    The Parties Negotiate the Proposed Settlement and Plaintiffs Voluntarily Dismiss the Individual Defendants ...................................9

THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE CONSIDERING THE SUBSTANTIAL RISKS PLAINTIFFS FACE IF THEY CONTINUE TO LITIGATE ..................................................................10

I.    PLAINTIFFS FACE A RISK OF DISMISSAL BECAUSE THEY IMPERMISSIBLY BASE THEIR CLAIMS ON THE SEC ORDER .........10

    A.    Plaintiffs' Allegations Copied from the SEC Order Are Immaterial and May Be Stricken Under Rule 12(f)...........................10

    B.    Defendants Had No Obligation To Confess to Unadjudicated Wrongdoing...................................................................................11

II.    PLAINTIFFS FACE A RISK OF DISMISSAL BECAUSE THEY DO NOT PLEAD A SECTION 10(B) CLAIM ...........................................12

A.      Plaintiffs Fail To Allege Facts Supporting a Strong Inference of Scienter ................................................................................................. 12

B.      Plaintiffs Do Not Allege Any Actionable Misrepresentation ............. 15

CONCLUSION ................................................................................................. 18

ii

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)......................................................................4

*City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*,
713 F. Supp. 2d 378 (D. Del. 2010) ...............................................................12

*In re Discovery Labs. Securities Litigation*,
No. 06-1820, 2006 WL 3227767 (E.D. Pa. Nov. 1, 2006)............................16

*Employees Retirement System of Providence v. Embraer S.A.*,
No. 16 Civ. 6277 (RMB), 2018 WL 1725574 (S.D.N.Y. Mar. 30,
2018) ..............................................................................................................12

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)........................................................................................12

*Fan v. StoneMor Partners LP*,
927 F.3d 710 (3d Cir. 2019) ..........................................................................16

*In re Galena Biopharma, Inc. Securities Litigation*,
C.A. No. C 17-929, 2019 WL 5957859 (D.N.J. Nov. 12, 2019) ..................11

*Goldsmith v. Weibo Corp.*,
Civil Action No. 17-4728 (SRC),
2018 WL 2733694 (D.N.J. June 7, 2018).......................................................16

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ..........................................................................13

*In re iAnthus Cap. Holdings, Inc. Sec. Litig.*,
No. 20-cv-3135 (LAK), 2021 WL 3863372 (S.D.N.Y. Aug. 30, 2021).........5

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
Case No. 2:20-cv-02155-SRC-CLW,
2021 WL 4191467 (D.N.J. Sept. 15, 2021)................................................3, 11

iii

*Kates ex rel. MetLife, Inc. v. Kandarian*,
   C.A. No.19-1266-LPS-JLH,
   2020 WL 4287374 (D. Del. July 27, 2020)...................................................15

*L.C. v. Central Pa. Youth Ballet*,
   No. 1:09-cv-2076, 2010 WL 2650640 (M.D. Pa. July 2, 2010) ...................10

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) ........................................................................10

*Lovallo v. Pacira Pharmaceuticals, Inc.*,
   No. 14-06172 (WHW), 2015 WL 7300492 (D.N.J. Nov. 18, 2015) ............16

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010)........................................................................................4

*In re Newell Brands, Inc. Securities Litigation*,
   837 F. App'x 869 (3d Cir. 2020).................................................................18

*Pamcah-UA Local 675 Pension Fund v. BT Group PLC*,
   No. 20-2106, 2021 WL 3415060 (3d Cir. Aug. 5, 2021)..............................15

*Penn Mutual Life Insurance Co. v. Norma Espinosa 2007-1 Insurance Trust*,
   C.A.,
   No. 09-300-LPS, 2011 WL 710970 (D. Del. Feb. 22, 2011).......................10

*In re Petrobras Securities Litigation*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018) ..........................................................4

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) ..........................................................................5

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ...........................................................................11

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ........................................................................14

*Singleton v. First Student Management LLC*,
   Civil Action No. 13–1744 (JEI/JS), 2014 WL 3865853 (D.N.J. Aug.
   6, 2014) ..........................................................................................................1

iv

*Williams v. Globus Medical, Inc.*,
  869 F.3d 235 (3d Cir. 2017) ..............................................................11

## STATUTES

15 U.S.C. 77q(a)(1)..............................................................................3

15 U.S.C. 77q(a)(2)-(3)........................................................................3

15 U.S.C. 78a ....................................................................................13

15 U.S.C. § 78j....................................................................................3

15 U.S.C. § 78u-4(b)(1) ....................................................................13

15 U.S.C. § 78u-4(b)(2)(A)................................................................12

Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") and BMW of North America, LLC ("BMW NA," and together with BMW AG, "Defendants") respectfully submit this memorandum of law in support of plaintiffs Mark Spanier and Marissa Weeresinghe's (together, "Plaintiffs") motion for preliminary approval of the proposed settlement (the "Proposed Settlement") as set forth in the Stipulation and Agreement of Settlement dated April 1, 2022 (the "Stipulation").

## PRELIMINARY STATEMENT

Defendants believe that the Proposed Settlement is fair, reasonable and adequate in light of the risks facing the settlement class due to the numerous defenses that absent a settlement Defendants would assert at the pleading stage and, if the Amended Complaint were to survive dismissal, at class certification, summary judgment or trial. *See, e.g.*, *Singleton v. First Student Mgmt. LLC*, Civil Action No. 13–1744 (JEI/JS), 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (courts must consider "risks of establishing liability" in evaluating class action settlements) (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). This submission outlines certain grounds for dismissal that Defendants would advance absent the Proposed Settlement.

Plaintiffs' overarching claim is that Defendants employed sales practices that allegedly had the effect of causing BMW NA to inaccurately report U.S. retail sales volume (a non-financial metric) to investors during the Class Period.

Plaintiffs contend that this allegedly inaccurate reporting rendered Defendants' disclosures materially misleading in violation of the federal securities laws. Plaintiffs' claim is based almost exclusively on allegations drawn from a voluntary settlement between the Securities and Exchange Commission (the "SEC") and Defendants as reflected in an Order Instituting Cease-and-Desist Proceedings, Making Findings and Imposing a Cease-and-Desist-Order entered by the SEC on September 24, 2020 (the "SEC Order").[1]

Defendants have strong arguments that Plaintiffs' reliance on the SEC Order is misplaced. As a threshold matter, the SEC Order has no evidentiary value because, by definition, it does not reflect an adjudication of any facts or claims on the merits. Instead, the SEC Order represents only a civil settlement in which Defendants made no admission of wrongdoing. As such, the contents of the SEC Order are immaterial as a matter of law, and allegations drawn therefrom should be stricken under Rule 12(f) of the Federal Rules of Civil Procedure. Without these allegations, the Amended Complaint is devoid of substantive allegations, let alone any that could support a claim for violations of the securities laws. Moreover, Plaintiffs' claims are based on the incorrect predicate that Defendants had an

---

[1] The SEC Order is Exhibit A to the accompanying Certification of Scott D. Musoff, dated April 28, 2022 (exhibits thereto referred to throughout this brief as "Ex. __").

obligation to disclose wrongdoing alleged—but never proven—by the SEC. It is well-settled that "'companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.'" *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, Case No. 2:20-cv-02155-SRC-CLW, 2021 WL 4191467, at *11 (D.N.J. Sept. 15, 2021) (citation omitted).

Even if the Court were to consider the unadjudicated allegations in the SEC Order, Defendants also would argue that the Amended Complaint does not meet the rigorous pleading standards applicable to federal securities claims, such as that:

- ***Plaintiffs Do Not Plead Scienter.*** Plaintiffs' core allegations of fraudulent intent, or scienter, are copied from the SEC Order. The SEC did *not*, however, allege fraudulent intent as to any individual or corporate entity. Plaintiffs' remaining allegations boil down to the contention that "management knew" of the fraud solely by virtue of their respective positions—boilerplate allegations that courts routinely reject. With virtually the same allegations, the SEC purposefully avoided a charge requiring scienter, charging only negligence-based claims under Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. 77q(a)(2)-(3) ("Securities Act") but not scienter-based claims under Section 17(a)(1),15 U.S.C. 77q(a)(1) or Section 10(b), 15 U.S.C. § 78j, of the Securities Exchange Act of 1934 ("Exchange Act").

- ***Plaintiffs Do Not Plead Falsity or Materiality.*** Plaintiffs' central claim is that BMW NA "manipulated" sales volume figures. Yet nowhere does the Amended Complaint allege even the most basic details about this purported "manipulation," such as *when* it occurred or the *impact* on BMW AG's financials (indeed, there was none). Plaintiffs also allege that BMW NA misled investors by including dealer acquisitions of demonstrator and loaner vehicles in retail sales figures. But this practice was commonplace in the industry. More to the point, it was a matter of public record before and during the Class Period that BMW NA employed this practice, refuting any notion that investors would have been operating under any misconception.

3

These and other threshold defenses available to Defendants[2] present a substantial risk to recovery for Plaintiffs and the putative class and support the conclusion that the Proposed Settlement is fair, reasonable and adequate and should be preliminarily approved by the Court.[3]

## BACKGROUND

**A.    The Parties**

*Plaintiffs and the Putative Class.* In the original complaint, Plaintiff Spanier asserted claims on behalf of a putative class of investors in BMW American

---

[2] Among other things, the Amended Complaint would also be subject to dismissal under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), because Plaintiffs do not plead any domestic transaction to which the Exchange Act applies. In addition, Plaintiffs do not plead reliance—an essential element of their securities fraud claim, but not the claims brought by the SEC on which Plaintiffs heavily rely. Indeed, Plaintiffs rely exclusively on the presumption of class-wide reliance under a "fraud-on-the-market" theory yet fail to allege facts to plead market efficiency. *See Cammer v. Bloom*, 711 F. Supp. 1264, 1285, 1298 (D.N.J. 1989).

[3] Plaintiffs originally named as defendants but have since voluntarily dismissed without prejudice several current and former directors and officers of Defendants (the "Voluntarily Dismissed Individual Defendants"). There are additional defenses available to these former defendants, including, among other things, that (i) the Court lacks personal jurisdiction (with respect to German-based individuals); and (ii) Plaintiffs challenge no statement made by any of them. The Court may certify a settlement class regardless of the assertion of *Morrison* defenses. *See, e.g.*, *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 866–67 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (claimants who the court previously held "could not establish domesticity as a matter of law" could nonetheless be "part of the settlement class").

Depositary Receipts ("ADRs") between November 3, 2015, and September 24, 2020 (the "Class Period").[4] In the Amended Complaint, Spanier is joined by "named" plaintiff Marissa Weeresinghe, who alleges she purchased BMW AG "F shares."[5]

**Defendants.** BMW AG manufactures and sells premium vehicles worldwide. (Am. Compl. ¶ 2.) BMW AG sponsors its ADRs. (*Id.* ¶ 16.) BMW NA is a wholly-owned subsidiary of BMW AG. (*Id.* ¶ 17.) BMW NA imports and distributes BMW vehicles to independently-owned U.S. BMW dealerships. (*Id.*)

## B.   BMW NA Reports Retail Sales Figures

BMW NA periodically reports U.S. "retail" sales—*i.e.*, sales by independent BMW dealerships unaffiliated with BMW AG or BMW NA. (*See* Am. Compl. ¶¶ 66-132; SEC Order at 2 n.2.) These retail sales do not impact BMW AG's reported revenue. BMW AG records revenue upon sales from BMW NA to independent dealers. (*Id.*) Thus, whether a dealer retains a vehicle in inventory,

---

[4] BMW ADRs are "receipt[s] . . . issued by a depositary bank that represent[] a specified amount of [BMW AG underlying securities] that ha[ve] been deposited with a foreign branch or agent of the depositary, known as the custodian." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002). These ADRs are not exchange traded and trade only over the counter. (Am. Compl. ¶ 16.)

[5] F shares are shares of BMW AG denominated in U.S. dollars and listed in the U.S. *See* ECF No. 30, Ex. 1; *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, No. 20-cv-3135 (LAK), 2021 WL 3863372, at *4 n.39 (S.D.N.Y. Aug. 30, 2021). BMW AG did not issue these shares and has nothing to do with them.

sells the car to a retail customer or designates the car as a demonstrator or service loaner has no financial statement impact on BMW AG.

BMW NA's reported sales figures did not increase year-over-year throughout the Class Period. To the contrary, from 2015 to 2016 BMW NA's reported sales declined by 9.5%, and between 2016 and 2017 BMW NA's reported sales declined by 2.4%. (*See* Ex. B at 1; Ex. C at 1 (Press Releases).)

**C.     BMW NA Discloses and Widespread Public Reports Confirm Before and During the Class Period that BMW NA Reported Sales Figures Included Dealer Purchases for Demonstrator and Loaner Vehicles**

Since well before the putative Class Period it has been widely known that BMW NA (and other auto makers) included dealer purchases for demonstrator and loaner vehicles as retail sales in reported sales volume figures. Indeed, as early as 2012, BMW NA itself publicly disclosed that reported retail sales included cars purchased by dealers for demonstrator and loaner use. For example, in an article dated August 15, 2012, the *Wall Street Journal* reported that, according to BMW NA spokesman Kenn Sparks, "sales total[s] include[] vehicles that were purchased by . . . dealers for use as what are known as 'demos' – cars used on lots for test drives." (Ex. D at 2.) Similarly, in an article dated March 14, 2016, *Automotive News* quoted Sparks as stating that "'[c]ars are considered retailed when they enter productive use, . . . either from a sale to a customer or when a dealer puts a car into use as a demonstrator or service loaner.'" (Ex. E at 4.) And in offering memoranda

6

to prospective investors in connection with a series of bond offerings between 2016 and 2019, BMW disclosed that retail sales include "vehicles delivered for dealer use or demonstration and service loaners." (SEC Order at 9.)

**D.     The SEC Commences an Investigation and BMW AG and BMW NA Enter Into a Consent Agreement in Which They Do Not Admit Liability or the SEC's Factual Findings**

On December 24, 2019, the *Wall Street Journal* reported that the SEC had opened an investigation "into whether [BMW AG] engaged in a practice known as sales punching in the U.S.," which "occurs when a company boosts sales figures by having dealers register cars as sold when the vehicles actually are still standing on car lots." (Ex. F at 1.) On January 22, 2020, the SEC formally opened an investigation. (Ex. G at 54 (BMW Group Annual Report for 2019).)

BMW AG, in its first public filing after the SEC commenced its investigation, disclosed the SEC investigation. (Ex. G at 54, 165.) BMW AG also disclosed that (i) "the definition of deliveries includes any vehicles delivered in the United States if . . . the relevant dealers designate such vehicles as service loaner vehicles or demonstrator vehicles" and (ii) "[r]etail vehicle deliveries during a given reporting period do not correlate directly to the revenue that BMW Group recognises in respect of such reporting period." (*Id.* at 54.)

On September 24, 2020, BMW AG, BMW NA and BMW US Capital, LLC (collectively, "Respondents" in the SEC proceeding) agreed to resolve the

7

investigation in exchange for $18 million. (SEC Order at 1, 10.) The SEC Order

provided that the Respondents did not "admit[] or deny[] the findings herein,

except as to the Commission's jurisdiction over them and the subject matter." (*Id.*

at 1.)

The SEC alleged that "BMW NA used three practices that had the effect of

inaccurately reporting its U.S. retail vehicle sales volume (a non-financial metric)."

(SEC Order ¶ 2.) The SEC did not find that the challenged sales practices rendered

BMW AG's reported financial results misleading. Nevertheless, the SEC asserted

that, on account of the alleged sales practices, the Respondents' non-financial sales

data provided to investors in bond offerings between 2016 and 2019 were

"materially incomplete and inaccurate" in violation of Sections 17(a)(2) and

17(a)(3) of the Securities Act. (SEC Order ¶¶ 3-4.) Sections 17(a)(2) and 17(a)(3)

do not require proof of fraudulent intent (*id.* at 10), and the SEC Order does not

allege that BMW AG, BMW NA or anyone else acted with scienter.

E.     **Plaintiffs File This Lawsuit Based on the SEC Order**

A month after the SEC published the SEC Order, plaintiff Mark Spanier

filed the initial complaint in this action asserting claims for alleged violations of

Section 10(b) and Section 20(a) of the Exchange Act based on allegations drawn

from the SEC Order. (ECF No. 1.) On September 24, 2021, Plaintiffs filed an

Amended Complaint which, like the initial complaint, was based on allegations

drawn from the SEC Order. (ECF No. 30.)

**F.    The Parties Negotiate the Proposed Settlement and Plaintiffs Voluntarily Dismiss the Individual Defendants**

In November 2021 the Parties began settlement discussions. (Stipulation § I.B.) On November 30, 2021, Plaintiffs voluntarily dismissed without prejudice the Voluntarily Dismissed Individual Defendants, which dismissal the Court so-ordered on December 1, 2021. (ECF Nos. 37-38.) On February 1, 2022, the parties entered into a Memorandum of Understanding setting forth the terms of an agreement in principle to resolve the Action for $1.75 million in return for a release of all claims against Defendants, as set forth in more detail in the Stipulation. (*See* Stipulation §§ I.B, II.) On February 3, 2022, the parties filed a Notice of Settlement to inform the Court of the parties' agreement in principle, and requested that all deadlines and proceedings be stayed pending the execution of the parties' settlement agreement. (ECF No. 42.) On April 1, 2022, the parties executed the Stipulation memorializing the Proposed Settlement.

**THE PROPOSED SETTLEMENT
IS FAIR, REASONABLE AND ADEQUATE
CONSIDERING THE SUBSTANTIAL RISKS
PLAINTIFFS FACE IF THEY CONTINUE TO LITIGATE**

**I.     PLAINTIFFS FACE A RISK OF DISMISSAL BECAUSE THEY IMPERMISSIBLY BASE THEIR CLAIMS ON THE SEC ORDER**

**A.     Plaintiffs' Allegations Copied from the SEC Order Are Immaterial and May Be Stricken Under Rule 12(f)**

At the foundation of the Amended Complaint are unproven and unadjudicated allegations drawn from the SEC Order. (*Supra* Background §§ D-E.) These allegations are immaterial as a matter of law under Rule 12(f) and may be stricken. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("consent judgment" between the defendant and the SEC was "not the result of an actual adjudication of any of the issues" and so could "not be used as evidence in subsequent litigation between that corporation and another party"); *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, C.A. No. 09-300-LPS, 2011 WL 710970, at *4 (D. Del. Feb. 22, 2011) (striking allegations drawn from complaint in another pending action); *L.C. v. Cent. Pa. Youth Ballet*, No. 1:09-cv-2076, 2010 WL 2650640, at *7–8 (M.D. Pa. July 2, 2010) (striking allegations copied from consent order). Because these allegations form the entire basis for Plaintiffs' contention that Defendants made misleading statements or acted with fraudulent intent, the Court could dismiss Plaintiffs' claims on this ground alone.

10

**B.      Defendants Had No Obligation
To Confess to Unadjudicated Wrongdoing**

Plaintiffs appear to contend that Defendants were required to admit to the purported sales volume "inaccura[cies]" because that alleged misconduct eventually led to the SEC investigation and SEC Order. But Defendants were not at any time obligated under the federal securities laws to confess to uncharged and still-unadjudicated allegations raised by the SEC. "'Silence, absent a duty to disclose, is not misleading under Rule 10b-5.'" *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241 (3d Cir. 2017) (citation omitted). Moreover, "'disclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.'" *Industriens Pensionsforsikring*, 2021 WL 4191467, at *11 (citation omitted).

Applying this principle, courts routinely dismiss claims based on an issuer's alleged failure to admit to unproven misconduct that is the subject of a government investigation—even where that investigation later leads to a finding of fault. *See, e.g.*, *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 97-99 (2d Cir. 2021) (dismissing claim based on alleged failure to confess to violations of anti-money laundering laws implicating as much as $200 billion worth of transactions notwithstanding scrutiny, reprimands and fines from Danish, French and Estonian regulators because issuer "was under no obligation to self-report its growing suspicions regarding those issues"); *In re Galena Biopharma,*

11

*Inc. Sec. Litig.*, C.A. No. C 17-929, 2019 WL 5957859, at \*10-11 (D.N.J. Nov. 12, 2019) (dismissing claims based on alleged failure to confess to legal exposure related to, among other things, "off-label [pharmaceutical] promotion; kickback payments; [and certain individuals'] intention to manipulate the company's stock"); *Emps. Ret. Sys. of Providence v. Embraer S.A.*, No. 16 Civ. 6277 (RMB), 2018 WL 1725574, at \*1, \*5 (S.D.N.Y. Mar. 30, 2018) (no obligation by issuer to admit to violations prior to entry of Consent to Entry of Final Judgment with the SEC and a Deferred Prosecution Agreement with the U.S. Department of Justice in which issuer stipulated that it had engaged in improper payments).

Absent the Proposed Settlement, Plaintiffs' claims would be at risk of dismissal under this well-settled law.

## II.    PLAINTIFFS FACE A RISK OF DISMISSAL BECAUSE THEY DO NOT PLEAD A SECTION 10(B) CLAIM

### A.    Plaintiffs Fail To Allege Facts Supporting a Strong Inference of Scienter

Plaintiffs must plead "with particularity facts giving rise to a strong inference" that the Defendant acted with scienter, 15 U.S.C. § 78u-4(b)(2)(A), "a mental state [of] intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). To plead fraudulent intent for a corporate defendant, a plaintiff must generally allege facts to show that someone whose intent could be imputed to the corporation acted with the requisite scienter. *See City of Roseville Emps' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378,

403 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011).

Plaintiffs' core scienter allegations are drawn from allegations in the SEC Order. (Am. Compl. ¶¶ 41, 52, 56-62.) Yet the SEC Order itself contains no allegations of scienter. To the contrary, the SEC Order expressly states that a "violation of [the charged] provisions does not require scienter." (SEC Order at 10.) Furthermore, the SEC Order does not so much as reference any of the Voluntarily Dismissed Individual Defendants, let alone conclude that any acted with fraudulent intent. (*Id.*)

Plaintiffs also offer conclusory allegations that BMW AG and BMW NA "management" were "aware of, and approved" the alleged banking and demonstrator and loaner practices. (Am. Compl. ¶¶ 41, 52.) These allegations do not pass muster under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. 78a, 15 U.S.C. § 78u-4(b)(1), because they do not indicate *who* was aware of *what* or *when*, let alone identify specific documents evidencing the availability of contrary information to any Voluntarily Dismissed Individual Defendant or agent whose knowledge can be imputed to BMW AG or BMW NA. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

Plaintiffs also rely heavily on BMW AG Internal Audit Group reports referenced in the SEC Order. With respect to "banking," Plaintiffs allege that BMW AG's Internal Audit Group "'repeatedly warned' BMW's management"

13

about the banking practices, first in March 2015 and then "'over the next few years.'" (Am. Compl. ¶ 57.) With respect to the demonstrator and service loaner program, Plaintiffs allege that BMW's Internal Audit Group "determined . . . that BMW NA was using demonstrators and loaners to inflate retail vehicles sales" in May 2015. (Am. Compl. ¶ 58.) But Plaintiffs do not allege that the Internal Audit Group concluded that either the banking practices or the demonstrator and service loaner program rendered any of BMW NA or BMW AG's public disclosures false or misleading.

Furthermore, as explained above, there was a steady drumbeat of reporting in the press on BMW NA's alleged practice of including demonstrator and loaner vehicles in reported sales volume figures beginning as early as 2012. BMW NA's own spokesman repeatedly confirmed on record that the company recognized demonstrator and service loaner cars as retail sales. (*Supra* Background § C.) Defendants could not have believed they were concealing from investors something that was already widely known. The far more compelling inference is that Defendants did not believe that there was anything inappropriate—let alone fraudulent—about the demonstrator and service loaner program. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) ("[A] court must weigh 'plausible opposing inferences' by comparing competing conclusions that can be drawn from the facts." (citation omitted)).

14

In any event, Plaintiffs do not allege facts to show that BMW "management" ignored these audit reports. To the contrary, the Amended Complaint concedes that the demonstrator and loaner program ceased in April 2017, less than a year and a half after the alleged November 2015 Internal Audit report and more than two years *before* the SEC announced that it had opened its investigation. (Am. Compl. ¶ 48.) In short, Plaintiffs' allegations reflect a healthy internal audit function that undercuts, rather than supports, an inference of scienter. *See, e.g., Pamcah-UA Loc. 675 Pension Fund v. BT Grp. PLC*, No. 20-2106, 2021 WL 3415060, at *2 (3d Cir. Aug. 5, 2021) ("The problem for the investors is that their allegations [of a review by an Audit Committee] also support the inference that [the issuer] intended to detect and prevent fraud."); *Kates ex rel. MetLife, Inc. v. Kandarian*, C.A. No. 19-1266-LPS-JLH, 2020 WL 4287374, at *10 (D. Del. July 27, 2020) ("If anything, the audit report weighs against an inference of scienter" where "[n]othing about the audit report itself suggests that control weaknesses were being ignored.").[6]

**B.    Plaintiffs Do Not Allege Any Actionable Misrepresentation**

Plaintiffs' claim that BMW NA secretly inflated sales volume by counting

---

[6] Plaintiffs do not offer any scienter allegations whatsoever with respect to their claim that BMW NA manipulated its sales calendar to smooth sales volume over time. (*See* Am. Compl. ¶¶ 54-55.)

demonstrator and loaner purchases by dealers as retail sales is also wholly unsupported by the disclosures on which Plaintiffs rely. Nothing in the challenged disclosures states or even suggests that reported retail sales do *not* include purchases by dealers. *Goldsmith v. Weibo Corp.*, Civil Action No. 17–4728 (SRC), 2018 WL 2733694, at *9 (D.N.J. June 7, 2018) ("A securities fraud claim based on purported statements that a defendant did not actually make fails, necessarily, to state a claim upon which relief can be granted."). Nor do Plaintiffs plead any other facts to show why sales figures should not include dealer transactions, or that BMW's accounting practices for demonstrator or service loaner vehicles were different from those of other auto manufacturers.

Furthermore, as noted above, there were widespread news reports before and during the Class Period reporting on BMW NA's demonstrator and loaner programs and their impact on retail sales figures. (*See supra* Background § C.) "[P]rior public disclosure [of an allegedly omitted fact] negates a finding that material information was withheld." *In re Discovery Labs. Sec. Litig.*, No. 06-1820, 2006 WL 3227767, at *11 (E.D. Pa. Nov. 1, 2006). As such, Courts routinely dismiss securities fraud claims where the information plaintiffs allege was concealed by defendants was publicly available. *See, e.g., Fan v. StoneMor Partners LP*, 927 F.3d 710, 716-17 (3d Cir. 2019) (affirming dismissal where investors were aware "at the outset" of concealed information); *Lovallo v. Pacira*

16

*Pharms., Inc.*, No. 14-06172 (WHW), 2015 WL 7300492, at *9 (D.N.J. Nov. 18, 2015) (alleged misrepresentation "is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market" (citation omitted)).

In addition, Plaintiffs do not, and cannot, allege that the demonstrator and loaner programs rendered inaccurate BMW's financial statements. The reason is twofold. First, as explained above, BMW AG does not derive revenue from retail sales. Rather, BMW AG records revenue at the time the dealer takes possession of a car from BMW. Whether and when a car is designated as sold by the dealer through a retail sale or a purchase by the dealer (*e.g.*, for a demonstrator or loaner car) has no revenue impact on BMW AG. (Ex. H at 101 (BMW Group Annual Report for 2015).) Second, the revenue recognized by BMW AG is net of dealer discounts and rebates. (*Id.*) In other words, BMW AG's reported revenue matches the amount the dealer actually pays for the car. As such, to the extent BMW NA provided rebates or incentives to dealers to designate cars as demonstrators or service loaners, those rebates and/or incentives reduced BMW AG's revenue as reflected in the company's financial statements.

By the same logic, there is no financial impact on BMW AG resulting from the alleged "banking" of retail sales or the adjustment of reporting dates of certain retail sales as alleged in the Amended Complaint. Moreover, Plaintiffs allege, at

17

most, that some sales occurred in one period but were reported in different periods. The end result is that BMW NA had the same overall number of sales as it reported in its press releases—the sales were merely distributed differently than the disclosures reflect. Plaintiffs do not, as they must, allege why shifting sales would be material to investors in the absence of a financial statement impact.

In short, Plaintiffs do not dispute that BMW AG's financial statements paint a complete and accurate picture of the company's revenue and overall financial condition. The alleged "manipulation" of BMW NA's retail sales figures hence could not be material. *See In re Newell Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 875 (3d Cir. 2020) ("Without allegations to support that [the alleged fraud] had a material financial effect on [the issuer], we cannot say that Defendants omitted information that would have 'significantly altered the total mix of information.'" (citation omitted)).

## CONCLUSION

Defendants respectfully submit that the Proposed Settlement is fair, adequate and reasonable in light of the strong defenses available to Defendants, including those set forth herein (among others), and respectfully request that the Court grant preliminary approval of the Proposed Settlement.

Dated:  April 28, 2022

/s/ Alan E. Schoenfeld

Alan E. Schoenfeld
Michael G. Bongiorno (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800 (telephone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
michael.bongiorno@wilmerhale.com

*Attorneys for Defendants BMW of North
  America, LLC*

/s/ Scott D. Musoff

Scott D. Musoff
Jay B. Kasner (*pro hac vice*)
Shaud G. Tavakoli (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM, LLP
One Manhattan West
New York, New York 10001
(212) 735-3000 (telephone)
(212) 735-2000 (fax)
scott.musoff@skadden.com
jay.kasner@skadden.com
shaud.tavakoli@skadden.com

*Attorneys for Defendants Bayerische
  Motoren Werke AG*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2022, I caused a copy of Defendants' Joint Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement on behalf of Defendants Bayerische Motoren Werke AG and BMW of North America, LLC, to be served electronically via ECF upon counsel to plaintiffs Mark Spanier and Marissa Weeresinghe.

Dated:  April 28, 2022                          /s/ Scott D. Musoff
                                                Scott D. Musoff

20