**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.* <br><br> *Defendants.* | Case No. 2:20-cv-15081-CCC-AME <br><br> CLASS ACTION <br><br> Motion Day: September 15, 2022 <br><br> Hon. Claire C. Cecchi |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  STANDARDS GOVERNING APPROVAL OF CLASS ACTION
     SETTLEMENTS ........................................................................................3

III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE..........5

     A.   The Court Should Grant Final Approval of the Settlement ..................5

          1.   Plaintiffs and Lead Counsel Adequately Represented the Class 5

          2.   The Settlement was the Result of Arm's-Length Negotiations
               Between Experienced Counsel ....................................................7

     B.   The Settlement is Substantively Fair: the Relief Provided for the
          Settlement Class is Adequate in light of the Risks, Costs, and Delay of
          Continued Litigation............................................................................8

          1.   The Complexity, Expense, and Likely Duration of the
               Litigation...................................................................................9

          2.   Risks to Proving Liability and Damages .................................10

          3.   Risks of Class Certification .....................................................13

     C.   The Settlement Amount is Within the Range of Reasonableness in
          Light of the Best Possible Recovery and Attendant Risks of Litigation
          ...........................................................................................................13

     D.   The Settlement Class's Reaction to the Settlement Supports Final
          Approval.............................................................................................16

     E.   The Settlement Satisfies the Remaining Rule 23(e)(2) Factors..........17

          1.   Attorneys' Fees.......................................................................17

          2.   The Parties Have No Other Agreements Aside from Opt-Outs
               ................................................................................................18

i

F.     The *Prudential* Factors Support Approval ...........................................19

G.     The Court Should Approve the Plan of Allocation .............................20

H.     Final Certification of the Settlement Class .......................................22

IV.    CONCLUSION............................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012) ...........................................................10

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014) ..........................................................................21

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................19

*Du on behalf of Enteromedics, Inc. v. Blackford*,
2018 WL 4691046 (D. Del. Sept. 28, 2018) ........................................................6

*F.C.V. Inc. v. Sterling Nat'l Bank*,
2006 WL 1319822 (D.N.J. May 12, 2006) .........................................................13

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................................................7, 11

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ...........................................................................5, 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................ 15, 17, 21

*In re Charter Commc'ns, Inc., Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005).....................................................15

*In re China Sunergy Sec. Litig.*,
No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) .............15

*In re Datatec Systems, Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ........................................................ 12, 21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ...............................................................................10

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016)................................................................18

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)........................................................... 12, 13, 21

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................21

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22244676 (S.D.N.Y. Sep. 29, 2003) ...................................................12

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ............................................................................14

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012).....................................................................14

*In re Marsh & McLennan Cos., Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).....................................................12

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010)..............20

*In re Nat'l Football League Players Concussion Injury Litig.*,
2016 WL 1552205 (3d Cir. Apr. 18, 2016).......................................................3, 9

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016).........................................................21

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).............................................................15

iv

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) .................................................. 10, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)..............................................................5

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
962 F.Supp. 450 (D.N.J. 1997)..............................................................9

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ...............................................................19

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010) .........................................................7

*In re Vicuron Pharms., Inc. Sec. Litig.*,
233 F.R.D. 421 (E.D. Pa. 2006) ............................................................5

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
2017 WL 2734714 (D.N.J. June 26, 2017) .......................................................9, 15

*Pelzer v. Vassalle*,
655 F. App'x 352 (6th Cir. 2016) ...........................................................18

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).......................................................9

*Singleton v. First Student Mgmt. LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014)........................................................5, 8

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .............................................................7, 21

*Swinton v. SquareTrade, Inc.*,
2019 WL 617791 (S.D. Iowa Feb. 14, 2019).......................................................4

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2017 WL 4167440 (E.D. Pa. Sept. 20, 2017).......................................................9

v

*Zavolta v. Lord, Abbett & Co., LLC*,
  No. 2:08-cv-04546, 20210 WL 686546 (D.N.J. Feb. 24, 2010) ...........................11

## Statutes

15 U.S.C. § 78u-4(a)(4) .......................................................................................18

## Rules

Fed. R. Civ. P. 23 ...................................................................................... passim

## Other Authorities

4 NEWBERG ON CLASS ACTIONS § 13.50.................................................................7

Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904) ...................4, 5

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Mark Spanier and Named Plaintiff Marissa Weeresinghe ("Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in the Action, approval of the proposed Plan of Allocation of Settlement proceeds, and certification of the Settlement Class for settlement purposes.

## I.      INTRODUCTION[2]

Subject to this Court's approval, Plaintiffs and Defendants have agreed to settle all claims in this Action against Defendants in exchange for a cash payment of $1.75 million. This is a favorable result for the Settlement Class in light of the significant risks inherent in this litigation. If approved, this Settlement will completely dispose of this Action.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated April 1, 2022 (the "Stipulation") (ECF No. 45).

[2] The Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Rosen Declaration.

This Settlement is fair, adequate, and reasonable under the governing standards in this Circuit. The $1.75 million Settlement, which recovers between 9.7% to 17.5% of class-wide damages, falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of litigating Defendants' anticipated motion to dismiss, and if successful, through summary judgment, trial, and the inevitable appeals. At the time the Settlement was reached, Plaintiffs had ample knowledge of the strengths and weaknesses of their claims, and were cognizant of the range of provable damages available in this case. The reaction of the Settlement Class has been overwhelmingly positive; to date, no objections have been received to any aspect of the Settlement.

The Court must also determine if Plaintiffs have adequately established a formula to distribute the Settlement. Here, the proposed Plan of Allocation was formulated by an expert, comports with applicable legal principles, and in no way favors Plaintiffs over other members of the Settlement Class. Accordingly, it is fair and reasonable.

The methods that Plaintiffs used to communicate notice – the Notice of Pendency and Proposed Settlement of Securities Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice (collectively, "Notice") – each closely followed

2

what is routinely used to communicate notice in securities class actions. Thus, the Notice also satisfied the requirements of Rule 23.

For these reasons, and those set forth below, Plaintiffs respectfully submit that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final approval.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any settlement of class action claims, and such approval should be granted "only after a hearing and only on finding that [a proposed settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Nat'l Football League Players Concussion Injury Litig.*, 2016 WL 1552205, at *16 (3d Cir. Apr. 18, 2016) ("*NFL Players*").

Rule 23(e)(2) instructs that the Court should determine whether the Settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and

the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006) (same).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918).

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Court Should Grant Final Approval of the Settlement

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Each aspect of procedural fairness is satisfied here.

#### 1.  Plaintiffs and Lead Counsel Adequately Represented the Class

Representative plaintiffs provide adequate representation of a class where the "named plaintiffs' interests are sufficiently aligned with" absent class members. *In*

5

*re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006). Here, Plaintiffs' claims are typical of, and coextensive with, the Settlement Class's claims, and they have no antagonistic interests. Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the Settlement Class's interests. *Du on behalf of Enteromedics, Inc. v. Blackford*, 2018 WL 4691046, at *5 (D. Del. Sept. 28, 2018) (finding adequacy where "[p]laintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief"). Indeed, Plaintiffs here adequately represented the Settlement Class by vigorously pursuing their shared claims against Defendants by, among other things, selecting experienced counsel, overseeing the litigation, communicating regularly with Lead Counsel, and participating in settlement discussions with Lead Counsel. ¶47.

Lead Counsel also adequately represented the Settlement Class throughout the litigation. Lead Counsel is highly qualified and experienced in securities litigation, as set forth in their firm resume.[3] Here, Lead Counsel zealously prosecuted the Action against skilled opposing counsel, achieving a favorable settlement for the Settlement Class.

Indeed, the Settlement was achieved only after Lead Counsel, among other things: (a) investigated and prepared the initial complaint; (b) investigated and

---

[3] *See* Ex. 3 (The Rosen Law Firm, P.A. firm resume).

6

drafted the comprehensive amended complaint; (c) researched potential arguments and counter-arguments concerning Defendants' anticipated motion to dismiss and in anticipation of settlement negotiations; (d) retained and consulted with an economic expert concerning damages; (j) engaged in lengthy negotiations with Defendants' Counsel to achieve a favorable settlement. ¶45. Accordingly, this factor supports final approval of the Settlement.

### 2. The Settlement was the Result of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." This "procedural" fairness determination also encompasses the third *Girsh* factor, which assesses the "degree of case development that Class Counsel have accomplished prior to Settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011); *see also In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010). Approval of a settlement is warranted "[w]here a court can conclude that the parties had 'sufficient information to make an informed decision about settlement[.]'" 4 NEWBERG ON CLASS ACTIONS § 13.50; *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

Here, the Settlement was the result of hard-fought negotiations between experienced counsel. As discussed above, Lead Counsel has extensive experience litigating securities class actions. Defendants were represented by experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps") and Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"). Moreover, at the time the Settlement was reached, Plaintiffs had a thorough understanding of the strengths and weaknesses of their case. *See* ¶45 (detailing the investigation and work performed by Lead Counsel); ¶¶ 22-27 (explaining the risks of continued litigation).

B. **The Settlement is Substantively Fair: the Relief Provided for the Settlement Class is Adequate in light of the Risks, Costs, and Delay of Continued Litigation**

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Girsh* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *Singleton*, 2014 WL 3865853, at *5. As discussed below, each of these factors supports approval of the Settlement.

8

### 1. The Complexity, Expense, and Likely Duration of the Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must also 'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement.'" *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016) (quoting *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 319 (3d Cir. 1998)).

Courts routinely recognize that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate[.]" *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).[4]  Additionally, were the litigation to continue, a potential recovery - if any - "would occur years from now, substantially delaying payment . . . to the [] Class." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *8 (S.D.N.Y. Mar. 24, 2014).  In contrast, the Settlement provides an immediate, substantial, and certain recompense to the Settlement Class without exposing the Settlement Class to the risk, expense, and delay of continued

---

[4] *See also W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2017 WL 4167440, at *4 (E.D. Pa. Sept. 20, 2017) (commenting that "[s]ecurities litigation is notoriously complicated and it is certainly not conducted on the cheap"); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017) (observing that "[f]ederal securities class actions by definition involve complicated issues of fact and law.") (quotation omitted).

9

litigation. *See Par Pharm.*, 2013 WL 3930091, at \*4 ("Given the procedural and substantive complexities inherent in securities fraud class actions, and the time and expense necessarily involved in fully adjudicating this matter, the Court finds that this factor weighs decidedly in favor of approving the Settlement.").

Indeed, securities class actions are inherently complex and expensive to litigate. This case, which involves a Germany-based defendant, would likely have been even more so were litigation to continue. *See* ¶¶28-32 (detailing the complexity, expense, and duration of continued litigation).

## 2. Risks to Proving Liability and Damages

When deciding whether to approve a proposed class action settlement, the fourth and fifth *Girsh* factors—the risks of establishing liability and damages—are "commonly analyzed together" and "survey the possible risks of litigation by balancing the likelihood of success . . . against the immediate benefits offered by settlement." *Alves v. Main*, 2012 WL 6043272, at \*19 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) (noting the "potential rewards (or downside)" of continued litigation).

While Plaintiffs believe that their claims have merit, they also recognize that they face substantial obstacles to proving liability and damages. When compared to the certainty of the benefit conferred by the Settlement, these risks militate against

10

further litigation, and support a determination that the Settlement is fair, reasonable and adequate.

**Liability**: Plaintiffs face considerable hurdles to establishing liability. Indeed, "[t]he difficulty of establishing liability is a common risk of securities litigation." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11.

Here, there is no guarantee that this Action would survive Defendants' anticipated motion to dismiss. Defendants had strong arguments against several elements of Plaintiffs' *prima facie* claim. For example, the element of materiality would be strongly contested because the alleged false sales figures did not impact BMW AG or BMW NA's financial statements (*i.e.* the allegations concern falsification of non-financial metrics only). Therefore, a compelling argument could be made that investors did not consider the allegedly false sales figures to be material to their investment decision.

Moreover, to prevail over Defendants' anticipated motion to dismiss, Plaintiffs must plead facts supporting a strong inference that Defendants acted with scienter. Because the Third Circuit has not recognized the doctrine of corporate scienter,[5] Plaintiffs must identify and impute the scienter of a specific officer or director to BMW AG and BMW NA. Defendants would surely have argued that the

---

[5] *See, e.g. Zavolta v. Lord, Abbett & Co., LLC,* No. 2:08-cv-04546, 20210 WL 686546, at *7 (D.N.J. Feb. 24, 2010) (questioning the viability of corporate scienter in light of the Third Circuit's rejection of the group pleading doctrine).

11

alleged schemes were devised and carried out by low level employees whose scienter cannot be imputed to the corporation.

**Damages**: Proving damages in securities fraud trials "is always difficult and invariably requires expert testimony which may, or may not, be accepted by a jury." *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3 (S.D.N.Y. Sep. 29, 2003); *see also In re Datatec Systems, Inc. Sec. Litig.*, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) ("there would likely be a battle of experts at trial and there would be no guarantee whom the jury would believe.").

Here, Defendants have colorable arguments that could greatly reduce, or even eliminate, damages. *See* ¶26 (explaining potential loss causation and damages arguments). If a jury were to accept Defendants' arguments, Plaintiffs face the prospects of litigating this case for years at great expense, only to recover nothing. *In re Marsh & McLennan Cos., Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

### 3. Risks of Class Certification

The sixth *Girsh* factor "evaluates the risks of maintaining the class throughout the trial." *F.C.V. Inc. v. Sterling Nat'l Bank*, 2006 WL 1319822, at *6 (D.N.J. May 12, 2006). Defendants would undoubtedly vigorously challenge class certification, and such disputes could very well delve into another "battle of the experts." Plaintiffs would need to retain an economics expert to opine that BMW AG's ADRs and F Shares traded on an efficient market, and that there was a common methodology to calculate class-wide damages. Defendants would most certainly engage an expert to contest Plaintiffs' expert. Even if a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). The Settlement avoids the risk and expense of briefing class certification.

### C. The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

"The final two factors set forth in *Girsh* are typically considered in tandem, and 'ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial.'" *Par Pharm.*, 2013 WL 3930091, at *7. In conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are

13

yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484-85 (D.N.J. 2012). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 105 (D.N.J. 2012). "Rather, the percentage, recovery must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *In re AT & T Corp.*, 455 F.3d at 170.

Considering the substantial risks that Plaintiffs face if litigation were to continue, this Settlement - which provides a certain and immediate recovery of $1.75 million for the benefit of the Settlement Class - is a favorable result. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on the motion to dismiss, class certification, summary judgment, and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation - *i.e.*, Plaintiffs' *best-case scenario* - the total *maximum* damages would be approximately $18 million, under which scenario the Settlement represents a recovery of 9.7%. However, that was Plaintiffs' best-case scenario for damages. A more realistic estimate of damages, based on the lack of statistical significance of the stock drop on at least one of the corrective disclosure dates, is approximately $10 million. Thus,

14

the $1.75 million Settlement recovers approximately 17.5% of what Plaintiffs believe to be the more realistic estimate of potentially provable damages.

A recovery in the range of 9.7% to 17.5% of damages compares favorably to settlements in similar cases. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re China Sunergy Sec. Litig.,* No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages); *Par Pharm.* 2013 WL 3930091, at *2 (approving settlement recovering 7% of damages); *Universal Travel*, 2017 WL 2734714, at *11 (approving settlement recovery 10% of damages).

Taking into account the real possibility that Plaintiffs might recover nothing (*e.g.* if Plaintiffs cannot defeat Defendants' anticipated motion to dismiss, if Defendants win on their inevitable loss causation arguments, etc.), this Settlement Amount is within the range of reasonableness, weighing in favor of final approval.

### D. The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Girsh* factor – the reaction of the Settlement Class – overlaps with Rule 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. *See* Ex. 1, Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Bravata Decl.") at ¶¶13-14.

Here, in accordance with the Court's Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order", ECF No. 49), the Claims Administrator, Strategic Claims Service ("SCS") caused 109,594 Postcard Notices to be mailed to potential Settlement Class Members. *Id.* at ¶6. SCS was also notified by a nominee that it sent direct links to the Long Notice to an additional 15,401 potential Settlement Class Members. *Id.* at ¶7. SCS also caused the Summary Notice to be published on *Globe Newswire*. *Id.* at ¶10. In addition, SCS established a dedicated website where potential Settlement Class Members can go to access information about the Settlement, view case documents, and file their claims electronically. *Id.* at ¶12.

The Settlement Class's reaction to date demonstrates strong support for the Settlement. There have been no objections to any aspect of the Settlement. *Id.* at

16

¶14. *Cendant,* 264 F.3d 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement[.]"). SCS received four requests for exclusion, all of which are invalid because they failed to, among other things, provide the required information to establish that they are part of the Settlement Class. *Id.* at ¶13. SCS has followed up with each for the required information, and to date, none have responded with the requested information. *Id. See also,* Rosen Decl. at ¶40 (addressing each of the requests for exclusion, including that of Kristin Hahn, who also filed a letter with the Court (ECF No. 50)).

As provided in the Preliminary Approval Order, Plaintiffs will file reply papers in support of the Settlement on September 8, 2022, after the deadline for requesting exclusions or objecting has passed.  Plaintiffs' reply papers will address any objections or requests for exclusions received after the date of this filing.

> **E.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors**
>
> **1.  Attorneys' Fees**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, expenses, and award to Plaintiffs, filed concurrently herewith, Lead Counsel seeks an award of attorneys'

17

fees of one-third of the Settlement and payment for litigation charges and expenses. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Third Circuit.

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Plaintiffs also request $7,000 in total (comprised of $5,000 to Lead Plaintiff Mark Spanier and $2,000 to Named Plaintiff Marissa Weeresinghe) pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding this Action.

### 2. The Parties Have No Other Agreements Aside from Opt-Outs

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Stipulation (¶2.12), and in Plaintiffs' Preliminary Approval brief (ECF No. 47 at PageID 430), the Parties have entered into a standard supplemental agreement which provides that if the number of opt-outs reach a certain confidential threshold, Defendants have the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out

18

solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### F.    The *Prudential* Factors Support Approval

In addition to the *Girsh* factors, the Third Circuit also advises courts to address the considerations set forth in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998), where applicable. The *Prudential* factors relevant to this case are whether class members may opt out of the Settlement (they can), and whether the procedure for processing individual claims is fair and reasonable. 148 F.3d at 323–24.[6]

---

[6] The majority of the *Prudential* factors are irrelevant here (just as they were irrelevant in *Prudential*, 148 F.3d at 323-24). Here, no individual lawsuits were filed. Thus, there has been no experience in adjudicating individual actions, nor will there ever be. Scientific knowledge as understood in *Prudential* is not relevant here. There has been no discovery because of the PSLRA-mandated discovery stay (nevertheless, as discussed above, Plaintiffs were armed with information necessary to evaluate the strengths and weaknesses of their case). In this case, approval of the Settlement does not depend on approval of attorneys' fees. If the Court believes attorneys' fees requested are too high, it can just award a smaller amount in attorneys' fees and does not need to deny approval of the Settlement. Whether attorneys' fees are reasonable is therefore irrelevant. *Id.* at 323.

Claim procedures in securities class actions are standardized. As in every case, Settlement Class Members here must fill out a form setting out their mailing address and personal identifying information (either a Social Security Number or Tax Identification Number), and their transactions in the securities at issue (here, BMW AG ADRs and F Shares). It is necessary to ask Settlement Class Members to submit claims because there is no central repository of the ultimate beneficial owners of these securities. Only Settlement Class Members know who they are; they must therefore submit claims.

The claims procedures also require Settlement Class Members to submit proof of their transactions in BMW AG ADRs and F Shares. In Lead Counsel's experience, fraudulent claims are unfortunately submitted in many settlements. Often these claims, if approved, would have large recognizes losses. Requiring proof of transactions ensures that the Claims Administrator can verify suspicious account statements with the brokerage firms at which the accounts are purportedly held, ensuring that the Settlement does not pay fraudulent claims.

### G.    The Court Should Approve the Plan of Allocation

The Long Notice spells out in detail the Plan of Allocation, explaining how the Settlement proceeds are to be divided among claiming Settlement Class Members. *See* Bravata Decl., Exhibit A, at pp. 5-10. The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of

20

review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (quoting *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)); *see also Cendant*, 264 F.3d at 248. Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *DB Investments*, 667 F.3d at 328. "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014); *see also In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case.").

In this case, the Plan of Allocation was formulated by Lead Counsel in consultation with a financial expert. ¶35-36. The Plan of Allocation comports with applicable legal principles and employs accepted loss causation principles. It fairly and rationally allocates the Settlement proceeds among eligible Settlement Class members. *See In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *23 (D.N.J. Nov. 15, 2016) ("pro rata distributions are consistently upheld, and there is no

21

requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'"); *Global Crossing*, 225 F.R.D. 462 ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis."). Accordingly, the Plan of Allocation is fair, reasonable, and adequate, and should be approved.

###### H.    Final Certification of the Settlement Class

In its Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied". Preliminary Approval Order at ¶3 (finding that each of the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (ECF No. 47 at PageID 431-437), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement.

22

Dated: August 18, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Yu Shi (*admitted Pro Hac Vice*)
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: yshi@rosenlegal.com

*Lead Counsel for Plaintiffs and the*
*Settlement Class*

**CERTIFICATE OF SERVICE**

23

I hereby certify that on this 18th day of August, 2022 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen