# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.* <br><br> *Defendants.* | Case No. 2:20-cv-15081-CCC-AME <br><br> <u>CLASS ACTION</u> <br><br> Motion Day: September 15, 2022 <br><br> Hon. Claire C. Cecchi |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>AWARD TO PLAINTIFFS</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    HISTORY OF THE LITIGATION ..................................................3

III.   THE COURT SHOULD APPROVE THE FEE REQUEST .........................4

     A. Lead Counsel are Entitled to an Award of Attorneys' Fees From the Common Fund....................................................................................4

     B. The Court Should Award Attorneys' Fees Using the Percentage Approach ...........................................................................................5

IV.   APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS SUPPORTS LEAD COUNSEL'S REQUEST FOR A 33⅓% FEE ...............7

     A. The Size of the Fund Created and the Benefit to Class Members Supports the Requested Fee.................................................................8

     B. There Have Been No Objections by Settlement Class Members.............10

     C. The Skill and Efficiency of Lead Counsel Supports the Request ............12

     D. The Complexity and Duration of the Litigation Support the Request .....14

     E. The Risk of Nonpayment Supports the Requested Fee............................17

     F. Lead Counsel Devoted Significant Time to the Case ..............................18

     G. Approval of Similar Awards in Similar Cases Supports the Request......18

     H. The *Prudential* Factors Favor Approving the Requested Fee..................21

     I. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee ...................................................................................................23

V.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................................................................................................26

VI.     THE COURT SHOULD GRANT THE REQUESTED AWARD TO
        PLAINTIFFS ...........................................................................................28

VII.    CONCLUSION...........................................................................................31

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................................2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .............................................................................................5

*Andavarapu v. iBio, Inc. et al.*,
14-cv-1434-RGA  (D. Del. April 21, 2016) .......................................................30

*Bell Atlantic Corp. v. Bolger*,
2 F.3d 1304 ........................................................................................................11

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................................6, 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..............................................................................................4

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
513 F. Supp. 2d 322 (E.D. Pa. 2007).................................................................22

*Brown v. Esmor Correctional Servs., Inc.*,
2005 WL 1917869 (D.N.J. Aug. 10, 2005) .......................................................20

*Chemi v. Champion Mortg.*,
2009 WL 1470429 (D.N.J. May 26, 2009) ........................................................27

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) .................................................................. 12, 19

*Dartell v. Tibet Pharms., Inc.*,
No. CV 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017).............................21

*Elkin v. Walter Investment Management Corp.*,
   2018 WL 8951073 (E.D. Pa. Dec. 18, 2018) ........................................................20

*Fanning v. Acromed Corp.*,
   No. 1014, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ......................................21

*Florin v. Nationsbank of Georgia, N.A.*,
   60 F.3d 1245 (7th Cir. 1995) ...............................................................................2

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) .................................................................... passim

*Hall v. AT & T Mobility LLC,*
   No. CIV.A. 07-5325 JLL, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) .......... 19, 20

*Hensley v Eckerhart*,
   461 U.S. 424 (1983) ...........................................................................................8

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...........29

*In re Am. Bus. Fin. Servs. Inc. Noteholders Ltigiation*,
   No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008).................................27

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ................................................................... passim

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012)................................................................17

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................................9

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) .............................................................................4, 7

*In re Cendant Corp., Derivative Action Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002)....................................................................27

iii

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003)......................................................................19

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................14

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001)......................................................................20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................... 7, 11, 14

*In re GNC Shareholder Litig.*,
    668 F. Supp. 450 (W.D. Pa. 1987) .........................................................................14

*In re Greenwich Pharm. Sec. Litig.*,
    1995 WL 251293 (E.D. Pa. Apr. 26, 1995)..........................................................20

*In re Heckmann Corp. Sec. Litig.*,
    No. 1:10-cv-00378-LPS-MPT (D. Del. June 26, 2014) ......................................20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...............15

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................... passim

*In re Interpool, Inc. Sec. Litig.*,
    No. 04-321 (SRC) (D.N.J. Aug. 29, 2006).........................................................20

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2019 WL 7375288 (D.N.J. Nov. 7, 2019)............................................................19

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010)..............19

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
    176 F.R.D. 158 (E.D. Pa. 1997) ...........................................................................11

*In re Par Pharm. Sec. Litig.*,
  No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ..... 10, 14, 30

*In re Processed Egg Prod. Antitrust Litig.*,
  No. 08-MD-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012)...........................23

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ................................................................. 3, 6, 21, 23

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......... 10, 20

*In re Reliance Sec. Litig.*,
  2002 WL 35645209 (D. Del. Feb. 8, 2002) .........................................................20

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 WL 3008808 (D.N.J. Nov. 9, 2005)................................................ 19, 21, 26

*In re Remeron End-Payor Antitrust Litig.*,
  No. CIV. 02-2007 FSH, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ..................27

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001)...................................................................19

*In re Rite Aid Corp. Sec. Litig.*,
  362 F.Supp.2d 587 (E.D. Pa. 2005).....................................................................26

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................. 6, 11, 23, 24

*In re RJR Nabisco, Inc. Sec. Litig.*,
  No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)...........................22

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001)....................................................... 8, 20, 24, 28

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013)....................
  ........................................................................................................ 17, 23, 29, 30

*In re Tricor Direct Purchaser Antitrust Litig.*,
No. 05-340-SLR (D. Del. 2009) ...................................................................20

*In re Tupperware Brands Corp. Sec. Litig.*,
No. 620CV357ORL31GJK, 2020 WL 3259749 (M.D. Fla. May 27, 2020) .......12

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ...............................................................24

*In re Unisys Corp. Sec. Litig.*,
2001 WL 1563721 (E.D. Pa. Dec. 5, 2001) .....................................................20

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 315CV07658MASLHG, 2020 WL 3166456 (D.N.J. June 15, 2020)...........17

*In re Viropharma Inc. Sec. Litig.*,
No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)..............................10

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................5, 16

*Institutionalized Juvs. v. Sec'y of Pub. Welfare*,
758 F.2d 897 (3d Cir. 1985) .......................................................................24

*Katz v. China Century Dragon Media, Inc.*,
No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ...28

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015).........................................................13

*Lachance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1997)..................................................................27

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997) .............................................................9

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998) .......................................................................25

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................6, 26

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015)...................................................................26

*Meijer, Inc. v. 3M*,
  No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)...................25

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .........................................................................................24

*Murray v. Weinberger*,
  741 F.2d 1423 (D.C. Cir. 1984).........................................................................25

*Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*,
  2014 WL 12778314 (E.D. Pa. Sept. 15, 2014)...................................................20

*Neuberger v. Shapiro*,
  110 F. Supp. 2d 373 (E.D. Pa. 2000).................................................................20

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
  No. CV 11-2164, 2017 WL 2734714 (D.N.J. June 26, 2017)...................... passim

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........13

*Pepe v. Cocrystal Pharma, Inc., et al.*,
  Case No. 2:18-cv-14901 (D.N.J.) (McNulty, J.) .................................................30

*Rowe v. E.I. DuPont de Nemours & Co.*,
  No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) ..........
  ...................................................................................................... 8, 20, 21

*Schuler v. Meds. Co.*,
  No. 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ....... 9, 22, 25, 30

*Smith v. Dominion Bridge Corp.*,
  2007 WL 1101272 (E.D. Pa. April 11, 2007) .....................................................20

vii

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990) ...................................................................11

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................................6

*Tellabs, Inc. v. Makor Issues & Rights. Ltd.*,
   127 S. Ct. 2499 (2007)............................................................................5

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ........................................................17

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........13

*Wallace v. Powell*,
   288 F.R.D. 347 (M.D. Pa. 2012) ...........................................................21

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016)...............
   ......................................................................................... 12, 13, 14, 16

## Statutes

15 U.S.C. §77z-1(a)(4)................................................................................3

15 U.S.C. §78u-4(a)(6) ..............................................................................6

15 U.S.C. § 78u-4(a)(4) ...................................................................... 28, 29

## Other Authorities

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ...................................29

Lead Plaintiff Mark Spanier and Named Plaintiff Marissa Weeresinghe ("Plaintiffs") respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs.[1]

## I.    INTRODUCTION

The proposed $1.75 million all-cash, non-reversionary Settlement is the result of Lead Counsel's vigorous, persistent, and skilled efforts over the course of this nearly two-year old litigation. *See* ECF No. 1 (Initial Complaint filed by Lead Counsel on October 27, 2020). It is a favorable result for the Settlement Class, achieved in the face of significant litigation risks and hurdles.

Indeed, from the outset of this litigation Lead Counsel faced numerous challenges to establishing liability and damages. The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be litigating against corporate defendants represented by highly skilled defense counsel, under the heightened pleading standard and automatic discovery stay of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA - as well as a host of post-PSLRA judicial decisions concerning falsity, scienter, loss causation, and damages - have made it significantly more difficult for investors to bring and successfully conclude securities class actions. *See In re Ikon Off. Sols., Inc., Sec.*

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated April 1, 2022 (ECF No. 45).

1

*Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., sitting by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. Indeed, unlike the vast majority of securities class actions, no other law firms sought appointment as lead counsel in this Action.

Despite these risks, Lead Counsel undertook this litigation on a fully contingent basis with no guarantee of ever being paid. In short, at no point in this litigation were Lead Counsel "assured of a paycheck." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995).

For their efforts on behalf of the Settlement Class, Lead Counsel seek an award of attorneys' fees in the amount of one-third (33⅓%) of the Settlement Fund, or $583,333.33, plus interest earned at the same rate as the Settlement Fund. Having engaged in nearly two years of diligent and hard-fought litigation and invested $261,695 worth of professional time to achieve the Settlement, the requested attorneys' fee is reasonable based on an application of the Third Circuit's "*Gunter*" and "*Prudential*" factors for determining appropriate fee awards

2

in common fund cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (listing factors) (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). In addition, it is well within the range of fees awarded in similar complex, contingency fee cases, and is further supported by a "cross-check" of the requested attorneys' fee against Lead Counsel's lodestar, which results in a multiplier of 2.23.

Lead Counsel also seek reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this Action in the amount of $18,517.22.

Finally, Plaintiffs request a modest award in the total amount of $7,000 (compromised of $5,000 to Lead Plaintiff Mark Spanier and $2,000 to Named Plaintiff Marissa Weeresinghe) pursuant to 15 U.S.C. §77z-1(a)(4) to compensate them for their time spent leading this Action on behalf of the Settlement Class. This request is reasonable and in line with awards granted in similar cases.

## II.     HISTORY OF THE LITIGATION

The concurrently filed Declaration of Laurence Rosen ("Rosen Declaration" or "Rosen Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a more detailed description of, *inter alia*: the factual and procedural history of the Action; the nature of the claims asserted; the litigation and negotiations leading to the Settlement; the risks and uncertainties of

continued litigation; and a description of the services Lead Counsel provided for the benefit of the Settlement Class.

## III.   THE COURT SHOULD APPROVE THE FEE REQUEST

### A.   Lead Counsel are Entitled to an Award of Attorneys' Fees From the Common Fund

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[2] The Third Circuit and courts within this circuit have reached the same conclusion. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("[W]e agree with the long line of common fund cases that hold that attorneys 'whose efforts create, discover, increase, or preserve a [common] fund' . . . are entitled to compensation."); *Ikon*, 194 F.R.D. at 192 ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

Common fund fee awards, such as the 33⅓% of the Settlement Fund requested here, encourage and support meritorious class actions and thus promote private enforcement of, and compliance with, the federal securities laws, as well as representation of those seeking redress for damages inflicted on entire classes of

---

[2] Unless otherwise noted, internal citations and quotations are omitted.

4

persons. *See, e.g.*, *Gunter*, 223 F.3d at 198 (stating that goal of awarding fees from common fund is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Fair awards . . . encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."). Indeed, the Supreme Court has emphasized that private securities cases, such as this Action, are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 127 S. Ct. 2499, 2508 n.4 (2007); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (recognizing that "Congress, the Executive Branch, and this Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions")

**B.**    **The Court Should Award Attorneys' Fees Using the Percentage Approach**

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Settlement Class, and utilize a lodestar cross-check to confirm that the fee is reasonable. *See In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the

interests of counsel and the class. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (the percentage of recovery method "'is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'").[3] The Third Circuit has also "recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *In re AT & T Corp.*, 455 F.3d at 164; *Sullivan*, 667 F.3d at 330.  However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT & T Corp.*, 455 F.3d at 164.

The use of the percentage of recovery method also comports with the language of the PSLRA, which mandates that "[t]otal attorneys' fees and expenses awarded ... not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class … ." 15 U.S.C. §78u-4(a)(6) (emphasis added); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 300 ("Consistent with past jurisprudence, the percentage-of-recovery method was incorporated in the Private Securities Litigation Reform Act of 1995."); *Maley v. Del Glob. Techs.*

---

[3] *Accord In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid I*"); *Prudential*, 148 F.3d at 333; *Gunter*, 223 F.3d at 195.

*Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (when drafting the PSLRA, Congress "indicated a preference for the use of the percentage method"). Thus, "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005).

For the reasons set forth below, Lead Counsel's requested award of attorneys' fees of one-third of the Settlement Fund is reasonable and should be approved.

## IV. APPLICATION OF THE *GUNTER* AND *PRUDENTIAL* FACTORS SUPPORTS LEAD COUNSEL'S REQUEST FOR A 33⅓% FEE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common-fund cases. *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). In exercising this discretion, the Third Circuit has instructed district courts to consider, among other things, the "*Gunter* factors" and the "*Prudential* factors." *In re AT & T Corp.*, 455 F.3d at 165. The *Gunter* factors include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the

7

amount of time devoted to the case by Lead Counsel; and (7) the awards in similar cases.

*Id.* at 165. The *Prudential* factors include:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*Id.* "This list was not intended to be exhaustive. … [and] a district court should consider any other factors that are useful and relevant with respect to the particular facts of the case." *Id*. at 165-66. Moreover, in application, "these factors 'need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 (D.N.J. 2001), quoting *Gunter*, 223 F.3d at 195 n. 1.

As demonstrated below, analysis of the relevant factors supports the requested award.

### A.    The Size of the Fund Created and the Benefit to Class Members Supports the Requested Fee

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011); *see also Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). Of

course, "[a] smaller fund does not necessarily equate to a smaller percentage award." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. CV 11-2164, 2017 WL 2734714, at *11 (D.N.J. June 26, 2017). In fact, "because of fixed costs and economies of scale, attorneys' fees and costs do not increase dollar-for-dollar with the size of the case. Thus, it takes a greater percentage of the settlement to support litigation in a smaller case." *Id.*

Here, the $1.75 million settlement is a favorable outcome that will provide Settlement Class Members with an immediate cash recovery, while avoiding the significant risk, delay, expenses, and uncertainty of further litigation. As explained in Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement (the "Final Approval Brief") filed concurrently, the Settlement represents a recovery of 9.7% to 17.5% of maximum class-wide damages. This recovery compares favorably to similar settlements in the Third Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (Cecchi, J.) (finding that a 4%

9

recovery fell "squarely within the range of previous settlement approvals"); [4]

Accordingly, the Settlement represents a favorable outcome for the Settlement Class, providing an immediate and certain benefit that is in line with typical recoveries in securities class actions despite the many hurdles present in this case.

### B.    There Have Been No Objections by Settlement Class Members

The reaction of the Settlement Class to the requested fee is also important and, in this regard, courts consider "the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel." *Par Pharm.*, 2013 WL 3930091, at *9.

The Claims Administrator has caused 109,594 Postcard Notices to be mailed to potential Settlement Class Members. *See* Ex. 1 to the Rosen Decl., Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions

---

[4] *See also In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (noting that "class action settlements have typically recovered 'between 5% and 6.2% of the class members' estimated losses'"); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (approving an $8.1 million settlement that represented "7% recovery of total class-wide damages" because it was both "consistent with or above the average level of recovery in similar securities fraud class actions" and "within the proper range of reasonableness"); *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *14 (E.D. Pa. Jan. 25, 2016) (finding settlement of $8 million to be a "healthy percentage" where the recovery was 9-10% of the maximum estimated losses, but "likely reflect[ed] an even higher percentage of the estimated losses [l]ead [p]laintiff could have foreseeably recovered.").

and Objections ("Bravata Decl."), at ¶6. The Claims Administrator was notified by a nominee that it sent direct links to the Long Notice to an additional 15,401 potential Settlement Class Members. *Id.* at ¶8. A copy of the Summary Notice was also published on *Globe Newswire*. *Id.* at ¶10. Each of these notices states that Lead Counsel would request attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of no more than $25,000, and an award to Plaintiffs of no more than $7,000 total.[5]

While the deadline to file objections is not until August 25, 2022, and thus has not yet passed, to date there have been no objections to the fee request (or to any aspect of the Settlement). *Id.* at ¶14.[6] "[T]he absence of substantial objections by class members to the fee requests weigh[s] in favor of approving the fee request." *Rite Aid I*, 396 F.3d at 305; *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (even when 29 members of a 281 person class (*i.e.*, 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re General Motors*, 55 F.3d at 812 (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir.1993)) (stating that it is generally assumed that "'silence constitutes tacit consent to the agreement'"); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997)

---

[5] *See* Exhibits A-1, A-3, and A-4 to the Stipulation (ECF Nos. 45-2, 45-4, and 45-5).

[6] If any objections are received after the date of this filing, Plaintiffs will address them in Plaintiffs' reply brief, to be filed on September 8, 2022.

(holding that "relatively low objection rate 'militates strongly in favor of approval of the settlement'").

### C.   The Skill and Efficiency of Lead Counsel Supports the Request

The Third Circuit has explained that the goal of the percentage fee award device is to ensure "that competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198. In this regard, "[t]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000). Here, in the face of significant risks and determined opposition, Lead Counsel obtained a favorable result for the Settlement Class, securing a recovery representing up to 17.5% of maximum damages.

Lead Counsel's experience and track record are described in the firm resume. *See* Ex. 3 to Rosen Decl. As its firm resume shows, Lead Counsel is highly experienced in the complex field of securities fraud class action litigation and has obtained numerous recoveries of behalf of investors. Courts throughout the country, including in this district, have acknowledged The Rosen Law Firm's experience and ability. *See e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[The Rosen Law Firm] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, No.

12

620CV357ORL31GJK, 2020 WL 3259749, at *2-3 (M.D. Fla. May 27, 2020), *report and recommendation adopted*, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that The Rosen Law Firm is "well-credentialed" with "significant securities litigation experience"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation"). Lead Counsel applied the same skill and determination to litigating this Action.

"The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by [Plaintiffs'] Counsel." *Yedlowski*, 2016 WL 6661336, at *21; *see also Universal Travel*, 2017 WL 2734714, at *11 (same). Here, Defendants were zealously represented by experienced and able counsel from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps") and Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), two prominent firms with

13

ample resources and expertise. The ability of Lead Counsel to obtain a favorable outcome for the Settlement Class in the face of formidable legal opposition further confirms the quality of Lead Counsel's representation. Thus, this factor weighs in favor of the requested fee.

### D.    The Complexity and Duration of the Litigation Support the Request

"The fourth factor captures 'the probable costs, in both time and money of continued litigation.'" *Universal Travel,* 2017 WL 2734714, at *12 (quoting *In re Gen. Motors*, 55 F.3d at 812). As an initial matter, courts have repeatedly acknowledged that "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Par Pharm.*, 2013 WL 3930091, at *10; *see also In re GNC Shareholder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987) ("The complexity and concomitant expense of the instant litigation is beyond peradventure."); *Yedlowski*, 2016 WL 6661336, at *21 ("securities class actions are by nature particularly expensive to prosecute, usually requiring expert testimony on, at least questions of damages and loss causation."). This case was no exception.

As elaborated in the Rosen Declaration and in Plaintiffs' Final Approval Brief, Plaintiffs faced a number of hurdles in establishing liability, loss causation and damages - the resolution of any in Defendants' favor could have resulted in no recovery for the Settlement Class. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (commenting on

14

the risk in proving scienter, loss causation, and damages). To avoid this fate, Lead Counsel thoroughly investigated the claims in this Action, consulted with experts, filed a comprehensive amended complaint, and engaged in hard-fought negotiations with Defendants to achieve this Settlement.

However, had this litigation continued, Plaintiffs would have faced substantial hurdles and risk. Defendants would have filed their motion to dismiss. Even if Plaintiffs were to prevail over the motion to dismiss, Plaintiffs would have to engage in cross-border discovery, hire additional experts, and move to certify the class. Defendants would then have moved for summary judgment, which would have to be briefed and argued, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted, and motions *in limine* would have to be filed and argued. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments

overturned on post-trial motions or appeal"). Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If Lead Plaintiff were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, Defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."); *Yedlowski*, 2016 WL 6661336, at *21 ("If the jury found in Plaintiffs' favor, they would still face Defendants' post-trial motions and likely appeal. Collecting a judgment requires crossing every one of these hurdles, but each of these steps involves significant risks."). Considering the riskiness, expense, length, and complexity of this putative securities class action — especially when compared against the significant and certain recovery achieved by the Settlement — Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in favor of the requested fee. *See Universal Travel*, 2017 WL 2734714, at *12 (awarding one-third fee and noting that "due to the complexity and nature of securities litigation, any further litigation would likely be time consuming as well as expensive due to the need for experts.").

### E.    The Risk of Nonpayment Supports the Requested Fee

Lead Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *E.g., In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *28 (D.N.J. Oct. 1, 2013).

The risk of non-payment is especially high in securities class actions, as they are "notably difficult and notoriously uncertain." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 315CV07658MASLHG, 2020 WL 3166456, at *13 (D.N.J. June 15, 2020) (finding that the risk of non-payment supported fee request and that "recovery was uncertain due to the difficulty of prevailing in securities cases generally."). Legal precedents are continually making it more difficult to plead securities class actions. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Here, Lead Counsel undertook this litigation on a contingency basis, with no guarantee that their time would ever be compensated or expenses reimbursed. This is a heavy responsibility with substantial risk. In assuming this responsibility, Lead Counsel had to ensure that sufficient resources were dedicated to the prosecution of the Action. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on firms that are paid on an ongoing basis, like most defense counsel in these cases. In light of the difficulty and risk of undertaking such a lawsuit, Lead Counsel should be reimbursed for its time and expenses.

### F.      Lead Counsel Devoted Significant Time to the Case

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199. This factor is usually considered with the lodestar cross-check to look at reasonableness of counsel's requested fee. Accordingly, this factor is addressed in connection with the lodestar cross-check, *infra* Section IV. I.

### G.      Approval of Similar Awards in Similar Cases Supports the Request

With respect to the final *Gunter* factor, "the court must (1) compare the award requested with other awards in comparable settlements; and (2) ensure that the award is consistent with what the attorney would have received had the fee been negotiated on the open market." *Hall v. AT & T Mobility LLC*, No. CIV.A.

18

07-5325 JLL, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010).[7] As to the first prong of the inquiry, numerous courts within the Third Circuit, including the District of New Jersey, have awarded fees of one-third (*i.e.* 33⅓%) of the recovery, even in cases involving much larger settlement funds than the instant case. *See In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (awarding 33⅓% of $41.5 million settlement fund and noting that "awards in similar common fund cases appear analogous" and award was "consistent with other similar cases"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (awarding one-third of $7.3 million and stating that "the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *12 (D.N.J. Nov. 9, 2005) (one-third of $75 million); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2019 WL 7375288, at *4 (D.N.J. Nov. 7, 2019) (approving attorneys' fees of one-third, or $11,018,884.36); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 495-98 (E.D. Pa. 2003)

---

[7] The second prong of this *Gunter* factor is substantially similar to the second *Prudential* factor. *See AT&T Corp.*, 455 F.3d at 165 (listing factors).

(awarding one-third of $7 million settlement fund); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *10 (E.D. Pa. April 18, 2005) (finding award of one-third of $7 million reasonable after cross-checking percentage of recovery to lodestar).[8]

"The requested fee of 33⅓% is also consistent with a privately negotiated contingent fee in the marketplace." *Hall*, 2010 WL 4053547, at *21. "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in

---

[8] *See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340-SLR, Dkt. No. 543 (D. Del. 2009) (awarding one-third fee from $250 million settlement fund); *Rowe*, 2011 WL 3837106, at *18 (awarding one-third of $8.3 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) (one-third of $48 million); *In re Heckmann Corp. Sec. Litig.*, No. 1:10-cv-00378-LPS-MPT, slip op. at 2 (D. Del. June 26, 2014), ECF No. 308 (awarding 33.3% of $27 million settlement); *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, 2014 WL 12778314, at *7 (E.D. Pa. Sept. 15, 2014) (one-third of $15 million settlement); *In re Reliance Sec. Litig.*, 2002 WL 35645209, at *18 (D. Del. Feb. 8, 2002), opinion corrected, 2002 WL 35645207 (D. Del. Mar. 20, 2002) (awarding one-third of $7.485 million); *In re Unisys Corp. Sec. Litig.*, 2001 WL 1563721 (E.D. Pa. Dec. 5, 2001) (awarding one third of $5.75 million settlement fund); *In re Safety Components, Inc., Sec. Litig.*, 166 F.Supp.2d 72, 93-4 (D.N.J. 2001) (awarding one-third of $4.5 million settlement); *In re Greenwich Pharm. Sec. Litig.*, 1995 WL 251293 (E.D. Pa. Apr. 26, 1995) (one-third of $4.375 million); *Universal Travel*, 2017 WL 2734714, at *12 (awarding fees of one-third of $4.075 million settlement fund); *Elkin v. Walter Investment Management Corp.*, 2018 WL 8951073, at *1-2 (E.D. Pa. Dec. 18, 2018) (33⅓% of $2.95 million settlement fund); *Brown v. Esmor Correctional Servs., Inc.*, 2005 WL 1917869, at *14 (D.N.J. Aug. 10, 2005) (one-third of $2.5 million); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (33⅓% of $1.5 million); *In re Interpool, Inc. Sec. Litig.*, No. 04-321 (SRC), slip op. at 2 (D.N.J. Aug. 29, 2006) (awarding 33-1/3% of $1 million fund); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. April 11, 2007) (granting fee of "33.33%" of $750,000).

non-class, commercial litigation." *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03–0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005); *see also Fanning v. Acromed Corp.*, No. 1014, 2000 WL 1622741, at *7 (E.D. Pa. Oct. 23, 2000) (noting that "Lead Counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); *Dartell v. Tibet Pharms., Inc.*, No. CV 14-3620, 2017 WL 2815073, at *11 (D.N.J. June 29, 2017) (similar); *Rowe*, 2011 WL 3837106, at *22 (awarding 33⅓% as "consistent with a privately negotiated contingent fee in the marketplace"). Thus, the requested fee award is strongly supported by both subparts of this final *Gunter* factor.

## H.   The *Prudential* Factors Favor Approving the Requested Fee

The applicable *Prudential* Factors also weigh in favor of approving the requested fee. First, the Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing. *See Prudential*, 148 F.3d at 338. Here, although the existence of the SEC investigation aided in Plaintiffs' investigation of this action, Lead Counsel also performed their own independent investigation and developed their own theories to ultimately obtain the Settlement. *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) (while a government investigation uncovered the alleged conspiracy, the settlement in question could not be attributed

to work done by the government). Moreover, this Settlement provides BMW AG investors with a monetary recovery, which the SEC action does not provide. *See e.g., Bradburn Parent Tchr. Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (finding attorneys' fees were reasonable, in part because the settlement was in a separate litigation and resulted in a better outcome for class members). Accordingly, Lead Counsel's efforts should not be discounted due to the SEC action.

Second, the requested fee of one third of the common fund is also consistent with typical fee awards in non-class cases. *See In re RJR Nabisco, Inc. Sec. Litig.*, No. 818 (MBM), 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern [contingent fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases."). If this were an individual action, the customary contingent fee would likely range between 30% and 40% of the recovery. *See, e.g., Ikon*, 194 F.R.D. at 194; *Blum*, 465 U.S. at 903 n. *19 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."). Lead Counsel's fee request of one-third of the Settlement Fund comports with these private standards. *Schuler*, 2016 WL 3457218, at *10. Thus, this factor supports Lead Counsel's fee request.

Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Prudential*, 148 F.3d at 340. This Settlement does not have any particularly innovative terms because, as Lead Counsel believes, an all-cash recovery is the best remedy for the injury suffered by the investors in the Settlement Class, and is the standard recovery in securities class actions. In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

Accordingly, the *Gunter* and *Prudential* factors strongly favor approving the fee request.

## I.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

While not required, a court may "cross-check the percentage award at which [it] arrive[s] against the 'lodestar' award method[.]" *Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 333. "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid I*, 396 F.3d at 306. "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp.*

23

*ENHANCE Sec. Litig.*, No. 08-397 (DMC) (JAD), 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

In "cross-checking" the percentage of recovery award against the lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "mathematical precision" or "bean-counting." *In re AT & T Corp.*, 455 F.3d at 169 (*quoting Rite Aid I*, 396 F.3d at 306); 455 F.3d at 164 ("The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."). Accordingly, "the district court may rely on summaries submitted by counsel and need not review billing records." *Rite Aid I*, 396 F.3d at 306-07.

Here, application of a lodestar cross-check confirms that the requested 33⅓% fee is fair and reasonable. Lead Counsel devoted an aggregate total of 338.4 hours to the prosecution and resolution of this Action. Ex. 2 to Rosen Decl. at ¶¶ 3-4. Lead Counsel's lodestar—which is derived by multiplying their hours spent on the litigation by Lead Counsel's current hourly rates for attorneys—is $261,695.00[9] *Id*. Thus, the requested 33⅓% fee, which equates to $583,333.33

---

[9] Courts have approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *see also Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 103, n. 11 (D.N.J. 2001) ("calculating the lodestar of Lead Counsel using current hourly rates is appropriate."); *Institutionalized Juvs. v. Sec'y of Pub. Welfare*, 758 F.2d 897, 923

(plus interest on that amount at the same rate as earned by the Settlement Fund), represents a multiplier of approximately 2.23 on Lead Counsel's lodestar.[10]

The multiplier here is a strong indicator of the fairness of the requested fee because it demonstrates that counsel is requesting a fee well within the range normally granted by courts. *See In re AT & T Corp.*, 455 F.3d at 173 ("[W]e approved of a lodestar multiplier of 2.99 in *Cendant PRIDES*, in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *Schuler*, 2016 WL 3457218, at *9-10 (awarding one-third of settlement fund, resulting in 3.57 multiplier in case that settled before decision on motion to dismiss); *Ikon*, 194 F.R.D. at 195 (awarding 2.7 multiplier and noting that it was "well within the range of those awarded in similar cases"); *Universal Travel*, 2017 WL 2734714, at *13 (awarding one-third of settlement, resulting in 2.24 multiplier); *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006)

---

(3d Cir. 1985) & n. 41 (3d Cir. 1985) ("using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task for the district court" (quoting *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984))); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment").

Additionally, Lead Counsel submit that Lead Counsel's rates are less than, or comparable to, those used by peer plaintiff and defense-side law firms litigating matters of similar magnitude. *See* Ex. 4 to Rosen Decl. (Peer Firm Billing Rates).

[10] $583.333.33/$261,695.00 = 2.229.

(approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year); *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-85, 2005 WL 3008808, at *47-48 (D.N.J. Nov. 9, 2005) (multiplier of 1.8 is on the "low end of the spectrum"); *In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (approving percentage fee award that equated to a 6.96 multiplier). *A fortiori*, the lodestar cross-check confirms the reasonableness of the requested attorneys' fees.

Moreover, counsel should not be penalized for their efficiency and ability to resolve an action without protracted litigation and delay. *See Maley*, 186 F. Supp. 2d at 363–64, 373 (awarding 33.3% of $11.5 million settlement, reflecting a multiplier of 4.65, in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system").

## V.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 658 (E.D. Pa. 2015). Indeed, "'[c]ounsel in common fund cases are entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case.'" *Universal Travel*, 2017 WL

2734714, at *13 (*quoting In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002)); *see also In re Ikon*, 194 F.R.D. at 192 ("'There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund.'" (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 651 (E.D. Pa. 1997)) .

Here, Lead Counsel expended $18,517.22 in out-of-pocket costs, which are divided into categories in the declaration submitted by Lead Counsel. *See* Ex 2. to Rosen Decl. at ¶5; *see also Chemi v. Champion Mortg.*, 2009 WL 1470429, at *13 (D.N.J. May 26, 2009) (finding summary of expenses sufficient for determination that expenses requested were reasonable). These litigation expenses are well-documented, based on the books and records maintained by Lead Counsel, and reflect the costs of prosecuting this Action. *Id.* They include, among other things, fees for experts and investigators; translation fees; fees for notices and press releases; online legal research costs; court and filing fees. Reimbursement of similar expenses is routinely permitted. *See In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving reimbursement of "costs expended for purposes of prosecuting this litigation, including substantial fees for experts [and] copying costs"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Ltigiation*, No. 05-232, 2008 WL 4974782, at *18 (E.D. Pa. Nov. 21, 2008) (approving reimbursement of expenses for

27

"duplication costs, online legal research, travel, meals, experts, telephone, fax services, transcripts, postage, messenger, mediator, filing and court fees, service fees, [and] transportation" based on declarations of counsel); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (similar); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) (approving reimbursement of notice to class members and press releases).

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of litigation expenses up to $25,000 - significantly higher than the expense reimbursement sought - and to date, there have been no objections. Rosen Decl. ¶39. The requested litigation expenses should, therefore, be awarded.

## VI.   THE COURT SHOULD GRANT THE REQUESTED AWARD TO PLAINTIFFS

Pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), Plaintiffs seek an award of $7,000 in total (comprised of $5,000 for Lead Plaintiff Mark Spanier and $2,000 for Named Plaintiff Marissa Weeresinghe) for their time and effort spent overseeing this action.

While the PSLRA does not explicitly provide for incentive awards for a lead or named plaintiff to compensate them for their service, it does acknowledge that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of

28

the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995). "[T]he Third Circuit favors encouraging representative plaintiffs, by appropriate means, to create common funds and to enforce laws—even approving 'incentive awards' to class representatives." *Schering-Plough*, 2013 WL 5505744, at \*56; *see also. Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

The Notice informed Settlement Class Members that Lead Counsel would seek an award for Plaintiffs not to exceed $7,000 in total.[11] No objections have been received in response to these requests. Rosen Decl. ¶39. Accordingly, the Court award the requested amounts. Throughout this litigation, Plaintiffs were available to Lead Counsel as needed and performed their duties with attentiveness

---

[11] *See* Exhibits A-1, A-3, and A-4 to the Stipulation (ECF Nos. 45-2, 45-4, and 45-5).

and diligence. Plaintiffs: (1) volunteered to file a motion seeking appointment as lead plaintiff/be added as a named plaintiff on the complaint; (2) reviewed significant filings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; (4) gathered and produced information to Lead Counsel concerning their BMW AG investments; and (5) made themselves available to be deposed if needed, and to testify if there was a trial. These are the kinds of activities that warrant reimbursement for class representatives for their lost wages and business opportunities. *Schering-Plough*, 2013 WL 5505744, at *56 (approving awards to plaintiffs for reviewing pleadings, corresponding with Lead Counsel, and preparing for and attending mediation); *Par Pharm.*, 2013 WL 3930091, at *11 (similar); *Schuler*, 2016 WL 3457218, at *11 (approving awards to plaintiffs who reviewed filings, conferred with lead counsel, remained apprised about the case and the company).

Here, the award to Plaintiffs amount to a small percentage (*i.e.* 0.4%) of the Settlement Fund, and as such, is reasonable and should be approved. This Court and others in this District regularly make similar or more generous awards to lead plaintiffs. *Pepe v. Cocrystal Pharma, Inc., et al.*, Case No. 2:18-cv-14901 (D.N.J.) (McNulty, J.) (Dkt. No. 86) (awarding lead plaintiff $10,000 in case that settled before a motion to dismiss was filed); *Par Pharma.*, 2013 WL 3930091, at *11 (awarding $18,000 to lead plaintiff); *Andavarapu v. iBio, Inc. et al.*, 14-cv-1434-

RGA (Dkt. No. 69) (D. Del. April 21, 2016) (awarding $10,000 to lead plaintiff in case that settled before discovery.).

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that this Court: (a) award Lead Counsel reasonable attorneys' fees in the total amount of one-third of the Settlement Amount (*i.e.* $583,333.33), (b) reimburse Lead Counsel for expenses and costs in the total amount of $18,517.22; and (c) grant an award to Plaintiffs in the amount of $7,000 total.

Dated: August 18, 2022                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Yu Shi (*admitted Pro Hac Vice*)
275 Madison Ave, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: yshi@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of August, 2022 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence M. Rosen</u>
Laurence M. Rosen
