# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated, | Case No. 2:20-cv-15081-CCC-AME |
| *Plaintiffs,* | <u>CLASS ACTION</u> |
| v. | Hon. Claire C. Cecchi |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.* | |
| *Defendants.* | |

**DECLARATION OF LAURENCE ROSEN IN SUPPORT OF:(I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (II) MOTION FOR AN AWARD OF ATTORNEYS FEES, REIMBURSEMENT <u>OF EXPENSES, AND AWARD TO PLAINTIFFS</u>**

I, Laurence Rosen, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.      I am an attorney duly licensed to practice law in New Jersey and before this Court. I am the Managing Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Lead Counsel for Lead Plaintiff Mark Spanier and Named Plaintiff Marissa Weeresinghe ("Plaintiffs") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. The purpose of this Declaration is to set forth the nature of the litigation and negotiations that led to the settlement with Defendants Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") and BMW of North America, LLC ("BMW NA") (collectively, "Defendants", and with Plaintiffs, the "Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys'

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated April 1, 2022 (ECF No. 45).

fees and expenses and award to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $1.75 million in exchange for full releases of Plaintiffs' claims, and completely resolves the Action.

4.      After Plaintiffs moved for preliminary approval of the Settlement on April 28, 2022, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class Members (the "Preliminary Approval Order"). ECF No. 49.

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of 33⅓% (*i.e.* one-third) of the Settlement Fund (or $583,333.33), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $18,517.22, and a service award to Plaintiffs totaling $7,000.

6.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Bravata Decl.")

7. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Declaration of Laurence Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8. Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume")

9. Attached as <u>Exhibit 4</u> is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

**<u>Procedural History</u>**

10. This Action commenced on October 27, 2020 when Mark Spanier filed a putative class action complaint in this Court asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against BMW AG, BMW (US) Holding Corp. ("BMW US"), Norbert Reithofer, Oliver Zipse, Nicolas Peter, Harald Krüger, Bernhard Kuhnt, and Ludwig Willisch. ECF No. 1.

11. On December 28, 2020, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Mr. Spanier moved to be appointed Lead Plaintiff. ECF No. 11. The Court granted his motion on July 22, 2021, appointing Mr. Spanier as Lead Plaintiff and approving his selection of The Rosen Law Firm as Lead Counsel. ECF No. 20.

12.     Upon his appointment as Lead Plaintiff, Mr. Spanier, through counsel, further investigated the claims in this Action by, among other things, reviewing BMW AG and BMW NA's public filings, announcements, press releases, and earnings call transcripts, retaining and overseeing a private investigator to locate and interview former BMW NA and BMW US employees and relevant third-party witnesses, and consulting with an economics expert to analyze the range of provable damages.

13.     Lead Plaintiff, joined by Named Plaintiff Marissa Weeresinghe, pled the facts learned in the investigation in the Amended Class Action Complaint ("Complaint"), ECF No. 30. The Complaint alleged claims under Section 10(b) and 20(a) of the Exchange Act against BMW AG, BMW NA, Norbert Reithofer, Karl-Ludwig Kley, Oliver Zipse, Nicolas Peter, Harald Krüger, Bernhard Kuhnt, and Ludwig Willisch.  The Complaint removed BMW US as a defendant.

14.      On November 30, 2021, in an effort to streamline this litigation and pursuant to a confidential tolling agreement, Plaintiffs voluntarily dismissed Norbert Reithofer, Karl-Ludwig Kley, Oliver Zipse, Nicholas Peter, Harald Krüger, Bernhard Kuhnt, and Ludwig Willisch from the Action. ECF No. 37.

**Nature of the Allegations in the Complaint**

15.     The Complaint alleges that, during the Class Period, Defendants employed several tactics to manipulate BMW NA's reported U.S. retail sales

volume. The Complaint alleges that Defendants engaged in these tactics so that BMW NA could publicly maintain a leading position relative to other premium automotive companies, and also close the gap between actual retail sales volume and internal sales targets.

16.   The Complaint alleges that investors suffered losses when the price of BMW AG's American Depositary Receipts ("ADRs") and F Shares fell on: (1) December 23, 2019, after *The Wall Street Journal* reported that the U.S. Securities and Exchange Commission ("SEC") had opened an investigation into whether BMW AG was manipulating sales figures, and on (2) September 25, 2020, after the SEC issued an order detailing the results of its investigation and announcing a settlement with BMW AG and BMW NA.

**Settlement Negotiations**

17.   Because the range of provable damages in this Action is relatively modest, Plaintiffs believed that it was in the best interest of the Settlement Class to explore a possible settlement with Defendants before additional time and resources were expended.

18.   Accordingly, in November 2021, the Parties began settlement discussions. Negotiations continued until February 1, 2022, when the Parties entered into a Memorandum of Understanding setting forth the terms of an agreement in principle to fully resolve the Action for $1.75 million.

19.     On February 3, 2022, the Parties filed a Notice of Settlement to inform the Court of the Parties' agreement in principle, and requested that all deadlines and proceedings be stayed pending the execution of the Parties' settlement agreement.

20.     Over the next several months, the Parties worked diligently to formalize the settlement, culminating in a comprehensive Stipulation of Settlement ("Stipulation").

21.     On April 28, 2022, Plaintiffs file their motion for preliminary approval of the Settlement (ECF No. 46), which the Court granted on May 9, 2022 (Preliminary Approval Order, ECF No. 49).

**Risks of Continued Litigation**

22.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $1.75 million. As explained below, this case presents significant risks such that Plaintiffs and the Settlement Class might recover nothing at all – or substantially less than the Settlement Amount – if the case proceeded through additional layers of litigation to a verdict.

23.     First, there is no guarantee that this Action would survive Defendants' anticipated motion to dismiss.  Defendants had strong arguments against several elements of Plaintiffs' *prima facie* claim. For example, the element of materiality would be hotly contested because the alleged false sales figures did not impact BMW AG or BMW NA's financial statements (*i.e.* the allegations concern falsification of

non-financial metrics only). Therefore, a compelling argument could be made that investors did not consider the allegedly false sales figures to be material to their investment decision.

24. Moreover, to prevail over Defendants' anticipated motion to dismiss, Plaintiffs must plead facts supporting a strong inference that Defendants acted with scienter. Because the Third Circuit has not recognized the doctrine of corporate scienter, Plaintiffs must identify and impute the scienter of a specific officer or director to BMW AG and BMW NA. Defendants would surely have argued that the alleged schemes were devised and carried out by low level employees whose scienter cannot be imputed to the corporation.

25. Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

26. Indeed, even if Plaintiffs were to defeat Defendants' motion to dismiss, establishing damages in this case would be particularly difficult. Plaintiffs allege two dates (December 23, 2019 and September 25, 2020) on which the price of BMW AG's ADRs and F Shares fell in response to adverse disclosures. However, the drop on one of the dates (December 9, 2019) appears to be *not* statistically significant at the 95% confidence level. If Plaintiffs are left only with the September 25, 2020

stock drop, class-wide damages would be substantially reduced, or even eliminated, because the price of BMW AG's ADRs and F Shares rebounded *the next day* and increased to levels higher than what they were trading at prior to the September 25, 2020 adverse disclosure. Under these circumstances, some courts have held that there is no loss causation – a required element of Plaintiffs' *prima facie* case. Indeed, Plaintiffs faced the risk of expending substantial time and expenses litigating the case through discovery to summary judgment, only to end up with nothing.

27.    Had the Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to demonstrate that BMW AG's ADRs and F Shares traded on efficient markets and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

### Complexity, Expense and Likely Duration of the Litigation

28.    Without a Settlement, Plaintiffs face protracted and expensive litigation – with unique discovery challenges – that could drag the Action on for years.

29.    Even if Plaintiffs overcome Defendants' motion to dismiss (which, as discussed above, is by no means guaranteed), discovery would be highly complicated and impose substantial costs. Here, BMW AG is a German company.

BMW AG's officers and executives are all believed to reside in Germany. Most of the relevant evidence are located in German and/or in the German language, which would require Plaintiffs to translate them as well as hire bilingual staff attorneys to review them. Deposition of German nationals would be cumbersome, as Plaintiffs would have to make an application with the U.S. Consulate in Germany to take the depositions of German nationals. All this makes discovery especially protracted and complicated.

30. Following discovery, Defendants are likely to file motions for summary judgment. If Plaintiffs manage to defeat summary judgment, trial would be next, and whoever loses at trial would almost certainly appeal. This process could take years to play out.

31. Moreover, experts would be needed to opine on, at minimum, market efficiency, loss causation, damages, adding substantially to Plaintiffs' litigation costs.

32. Indeed, securities class actions are inherently complex and expensive to litigate, and this one is even more so because of the unique challenges presented by Germany-based Defendants.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

33.    Lead Counsel has extensive experience and a long track record of success representing investors in securities class actions in courts throughout the country, including in the District of New Jersey. *See* Ex. 3, Rosen Law Firm Resume.

34.    Defendants were represented by capable and experienced counsel from Skadden, Arps, Slate, Meagher & Flom LLP and Wilmer Cutler Pickering Hale and Dorr LLP, two of the largest and most prominent law firms in the world with considerable success and experience defending securities class actions.

**The Plan of Allocation**

35.    The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. Ex. 1, Bravata Decl. at Ex. A (Long Notice) at pp. 5-10. Lead Counsel formulated the Plan of Allocation with the help of a financial consultant to distribute the Settlement Fund fairly and reasonably to Settlement Class Members consistent with the federal securities laws and the principles of loss causation.

36.    Under the Plan of Allocation, a "Recognized Loss" amount will be calculated for all relevant transactions of BMW AG ADRs and F Shares during the Class Period. In general, the Recognized Loss will be the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual price and the sales price,

whichever is less. Accordingly, any ADR or F Share purchased during the Class Period that were not held over a corrective disclosure date (*i.e.* December 23, 2019 or September 25, 2020) will have no Recognized Loss because the level of alleged artificial inflation is the same on the date of purchase and on the date of sale. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

37.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in BMW AG ADRs and F Shares that were attributable to the conduct alleged in the Complaint.

**The Reaction of the Settlement Class**

38.    To date, 124,995 potential Settlement Class Members have received notice of the Settlement. *Id.* at ¶8. This includes 109,594 Postcard Notices mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, and an additional 15,401 potential Settlement Class Members who received a direct link to the Long Notice from their nominees. *Id.* at ¶¶ 6-7.

39.    The deadline to object to, or request exclusion from, the Settlement is August 25, 2022. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement. *Id.* at ¶14.

40.    There have been four invalid requests for exclusion. *Id.,* at ¶13. The four requests are invalid for failing to provide the required information and follow the required procedure:

a. **Kristin Hahn**: Ms. Hahn's exclusion request contains no information necessary to show that she is a member of the Settlement Class. *Id.,* at Ex. E. The claims administrator followed up with Ms. Hahn explaining the proper procedure for filing a request for exclusion; rather than responding with the required information to exclude herself, Ms. Hahn sent several more irrelevant and inappropriate messages to the claims administrator. *Id.* (Ms. Hahn also mailed a letter to the Court attempting to exclude herself from the Settlement. *See* ECF No. 50. Ms. Hahn's letter to Court also failed to include any of the required information necessary to show that she is a member of the Settlement Class).

b. **Richard Peters**: Mr. Peters' request for exclusion failed to include any of the information required to show that he is a member of the Settlement Class. *Id.* The claims administrator responded to Mr. Peters' message with instructions on how to properly file a request for exclusion. *Id.* To date, the claims administrator has not received any further correspondence from Mr. Peters. *Id.*

c. **Robert and Denise Walters**: Mr. and Ms. Walters' request for exclusion was submitted via a letter that appeared not have been properly printed, such that half of the letter was missing. *Id.* Their request also did not include any documentation of their BMW AG ADR purchases to establish their membership in the Settlement Class. *Id.* The claims administrator followed up via mail on July 20, 2022 for the missing information. *Id.* To date, the claims administrator has not received any further correspondence from Mr. and Ms. Walters. *Id.*

d. **Charlotte Libman**: The claims administrator received two emails from Ms. Libman: one requesting to be excluded (but providing no required information concerning her ownership of BMW AG ADRs or F Shares), and another asking how she may exclude herself. *Id.* The claims administrator responded with instructions on how to properly file a request for exclusion. *Id.* To date, the claims administrator has not received any further correspondence from Ms. Libman. *Id.*

41. Should any of the requests for exclusions be cured, or if any objections or additional requests for exclusions are received after the date of this declaration, Plaintiffs will address them in Plaintiffs' reply in support of the instant motions.

**Lead Counsel's Fee Request is Justified**

42.    Lead Counsel has worked diligently to achieve the Settlement, expending 338.4 hours to date for a lodestar value of $261,695.00. Ex. 2, Rosen Fee Decl. at ¶¶3-4. The lodestar multiplier for the requested fee is 2.23.  The rates Lead Counsel billed for their attorneys are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 4, Peer Firms Billing Rates.

43.    Lead Counsel spent a total of $18,517.22[2] in unreimbursed expenses in connection with the prosecution of this Action, considerably less than the $25,000 amount described in the Long Notice, Postcard Notice, and the Summary Notice of Pendency and Proposed Class Action Settlement. Ex. 2, Rosen Fee Decl. at ¶5. Lead Counsel has received no compensation from this case during the litigation.

44.    From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would potentially require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require. With an average

---

[2] This amount includes $400 in estimated expenses associated with traveling to the Settlement Fairness Hearing on September 15, 2022.

lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

45.    Lead Counsel's work in this Action included, among other things: (a) investigating and preparing the initial complaint; (b) preparing the motion for appointment of lead plaintiff; (c) conducting a thorough investigation, including a comprehensive review of BMW AG, BMW NA, and BMW US' public filings, announcements, press releases, earnings call transcripts; (d) searching and analyzing relevant analyst reports and news concerning the alleged misconducts; (e) retaining and overseeing a private investigator to locate and interview former BMW NA and BMW US employees; (f) drafting and filing the amended complaint; (g) effectuating service of process in Germany pursuant to the Hague Service Convention; (h) performing legal research concerning anticipated arguments on Defendants' motion to dismiss; (i) retaining and consulting with an economic expert concerning damages; (j) engaging in lengthy settlement negotiations with counsel for Defendants; (k) negotiating and preparing the Stipulation and associated documents; (l) preparing and filing the motion for preliminary approval; (m) supervising the claims administrator on the claims administration process.

46.    Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its motions, preparing for and

appearing at the Settlement Fairness Hearing scheduled for September 15, 2022, assisting Settlement Class Members with their Claim Forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

### The Requested Award to Plaintiffs is Justified

47.    Plaintiffs have devoted a substantial amount of time leading this action on behalf of the Settlement Class, including, among other things: (a) reviewing the complaints and other significant case documents; (b) searching for and providing documents concerning their BMW AG transactions; (c) communicating with counsel throughout the pendency of this Action concerning case posture and strategy; (d) evaluating and approving the Settlement. Accordingly, Plaintiffs request a modest award in the amount of $7,000 in total (comprised of $5,000 to Lead Plaintiff Mark Spanier and $2,000 to Named Plaintiff Marissa Weeresinghe) to compensate them for this time and as an incentive for representative plaintiffs to come forward in similar cases in the future.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 18, 2022.

*/s/ Laurence Rosen*
Laurence Rosen

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2022, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence Rosen*
Laurence Rosen