**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK SPANIER and MARISSA WEERESINGHE, Individually and on behalf of all others similarly situated, | Case No. 2:20-cv-15081-CCC-AME |
| | <u>CLASS ACTION</u> |
| *Plaintiffs,* | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUND** |
| v. | |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, *et al.* | Motion Day: September 18, 2023 |
| *Defendants.* | Hon. Claire C. Cecchi |

# **TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................. 1

II.    DETERMINATION OF AUTHORIZED CLAIMS ................................... 2

  A.    Properly Documented Claims ..................................................................2

  B.    Late But Otherwise Eligible Claims...........................................................3

  C.    Deficient and Ineligible Claims................................................................5

    1.  Inadequately Documented Claims ............................................................5

    2.  Claims Rejected for Reasons Other than Inadequate Documentation ..........6

III.    PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND........... 7

IV.    RELEASE OF CLAIMS ..................................................................... 8

V.    RECORDS RETENTION AND DESTRUCTION..................................... 10

VI.  CONCLUSION.................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hartman v. Powell*,
   2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ..........................................................4

*In re "Agent Orange" Prod. L*iab. Litig.,
   689 F. Supp. 1250 (E.D.N.Y. 1988) ......................................................................3

*In re Citigroup Inc. Sec. Litig.*,
   2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ........................................................4

*In re Forterra Inc. Sec. Litig.*,
   2021 WL 3464255 (N.D. Tex. Aug. 4, 2021) .........................................................7

*In re Friedman's, Inc. Sec. Litig.*,
   2009 WL 10671836 (N.D. Ga. July 23, 2009) .......................................................8

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ..................................................................... 2, 3, 4

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
   2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) ......................................................7

*In re Miva, Inc.*,
   2015 WL 12834962 (M.D. Fla. Sept. 23, 2015).....................................................8

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001) ..................................................................................3

*In re Patriot National, Inc. Sec. Litig,*
   2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021).........................................................7

*In re Toyota Motor Corp. Sec.  Litig.*,
   2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) .....................................................3, 7

*In re Valuevision Int'l Inc. Sec. Litig.,*
1997 WL 786457 (E.D. Pa. Dec. 1, 1997)...............................................................3

Lead Plaintiff Mark Spanier and named plaintiff Marissa Weeresinghe (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for entry of the [Proposed] Order Granting Distribution of Class Action Settlement Fund ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ("Bravata Declaration").

## I.    BACKGROUND

On May 9, 2022, the Court entered the Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement ("Preliminary Approval Order") (Dkt. No. 49).  On December 21, 2022, the Court entered the Order and Final Judgment  (Dkt. No. 64).  That same day, the Court also entered an order approving the Plan of Allocation, which was explained in the Notice

---

[1] All capitalized terms herein, unless otherwise indicated, have the same meanings and definitions as given to them in the Stipulation of Settlement dated April 1, 2022 (Dkt. No. 45).

1

mailed to Class Members, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund (Dkt. No. 63).

The Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), has advised Lead Counsel that it completed all analyses and accounting procedures in connection with the Claim Forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Authorized Claimants. *See* Bravata Declaration at ¶¶6-7.

All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Lead Counsel now respectfully requests that the Court authorize the distribution of the Net Settlement Fund.

## II. DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, all Claims were to be submitted to the Claims Administrator, online or postmarked no later than August 25, 2022. Preliminary Approval Order ¶20. The Claims Administrator has now finalized its determination of which Claims are authorized and which are ineligible. Bravata Declaration ¶¶6-7.

### A. Properly Documented Claims

SCS identified 12,744 properly documented, valid Claims. Of these Claims, 12,547 were timely, and 175 were not timely, but were received before December 19, 2022 ("Late But Otherwise Eligible Claims"). Bravata Declaration ¶7(a). The

2

12,744 valid Claims have total Recognized Losses of $1,878,935.27, and Plaintiffs respectfully request the Court approve payment of these Claims. *Id.*

### B.    Late But Otherwise Eligible Claims

The Claims Administrator continued to receive Claims after the August 25, 2022 claims-filing deadline. Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of June 15, 2021.

As set forth above, there were 175 Late But Otherwise Eligible Claims. Bravata Declaration ¶7(a). These Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement

3

Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Valuevision Int'l Inc. Sec. Litig.,* 1997 WL 786457, at *1 (E.D. Pa. Dec. 1, 1997) (allowing claims submitted after claims deadline because there was no delay in claims administration process).[2] It is, therefore, respectfully requested that this Court permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan.[3]

Additionally, it is respectfully requested that the Court reject as untimely any Claims received after December 19, 2022, and any responses to deficiency and/or rejection notices received after August 18, 2023. *See* Bravata Declaration ¶6 at n.3. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar.

---

[2] *See also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims").

[3] The 12,744 properly documented claims that the Claims Administrator and Lead Counsel are recommending for approval are listed in Exhibits B-1 and B-2 of the Bravata Declaration.

15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

### C.    Deficient and Ineligible Claims

#### 1. Inadequately Documented Claims

To be eligible for a payment from the proceeds of the Settlement, a Class Member must submit a Claim Form with adequate supporting documentation. *See* Preliminary Approval Order ¶20(b).  As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional and holding information found in a broker confirmation slip or account statement, or such other documentation as is deemed adequate by the Claims Administrator or Lead Counsel. *Id.*

SCS initially identified 334 inadequately documented Claims. Bravata Declaration ¶7(b).  When Claims were inadequately documented, SCS sent Claimants deficiency notices advising them of the deficiency, and they were given the opportunity to cure the deficiency. *Id.*  Of the 334 Claims initially identified as deficient, 7 have been successfully cured and are now considered valid. *Id.*  The remaining 327 deficient Claimants either did not respond to the deficiency notice, or responded with insufficient documentation. *Id.*  These Claimants were sent a

rejection notice explaining the reason(s) for their rejection. *Id.* None of the 327 deficient Claimants have objected or contested SCS's rejection notice. *Id.*

The Court approved the content of the Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid Claim. *See* Preliminary Approval Order at ¶¶8, 20(b). Each of the 327 Claimants have failed to provide proper documentation and the Court should, therefore, accept the Claim Administrator's determination and reject these inadequate Claims.

### 2. Claims Rejected for Reasons Other than Inadequate Documentation

In addition to the 327 inadequately documented Claims, SCS identified 56,380 Claims that it has recommended for complete rejection. Bravata Declaration ¶7(c). Included in this category are: (i) claims with no Recognized Losses; (ii) claims with BMW AG ADRs and/or F shares purchased on another market not publicly traded over-the-counter; (iii) claims with ADRs and/or F shares of BMW AG that were not purchased, but were received, granted by gift, inheritance, or operation of law; (iv) claims with ADRs and/or F shares of BMW AG purchased outside of the Class Period; (v) claims with shares sold short; (vi) claims withdrawn by filing entity; (vii) duplicate claims; and (viii) claims filed for securities other than BMW AG ADRs and F shares. *Id.* Each of these Claimants

have been advised of SCS's determination of ineligibility and none have contested SCS's conclusion. *Id.*

### III. PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution"). Bravata Declaration ¶9(a). Based on the substantial experience of Lead Counsel and SCS in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel and SCS propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* ¶12(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks. If, however, after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution if Lead

Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  During the redistribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the second distribution.  *Id.* ¶12(c).

If six month after such second distribution, or if such second distribution is not under taken, any remaining balance shall be donated to the Investor Protection Trust, a nonsectarian, not-for-profit organization dedicated to investor education. *Id.* ¶12(c). Similar distribution plans, including the selection of the Investor Protection Trust as a *cy pres* recipient, have been repeatedly approved by courts in other securities class actions.  *See e.g.*, *In re Patriot National, Inc. Sec. Litig,*, 2021 WL 1040462, at *1-2 (S.D.N.Y. Mar. 18, 2021);  *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255, at *1-2 (N.D. Tex. Aug. 4, 2021).

## IV.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of

the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Plaintiffs respectfully request the Court to release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order.  *See In re Patriot National*, 2021 WL 1040462, at *2; *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010).[4]

---

[4] *See also In re Miva, Inc.*, 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009).

## V.     RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that SCS may discard paper or hard copies of claims and all supporting documents no less than one year after distribution of the Net Settlement Fund to Authorized Claimants, and electronic copies of the same no less than one year after all funds from the Net Settlement Fund have been distributed.  This is SCS's customary document retention period and prevents the Settlement Class from incurring additional storage expenses and related fees. Bravata Decl. ¶9(e).

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter the Class Distribution Order submitted herewith, so that Settlement Class Members who submitted valid claims may receive their *pro rata* share of the Net Settlement Fund.

Dated: August 22, 2023                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ *Laurence M. Rosen*
Laurence M. Rosen
One Gateway Center
Suite 2600
Newark, NJ 07102
Tel:  (973) 313-1887
Fax: (973) 833-0399

Yu Shi (admitted *Pro Hac Vice*)
275 Madison Ave, 40th Floor
New York, NY 10016

10

Tel: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiffs and the Settlement Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2023 a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Laurence M. Rosen*
Laurence M. Rosen
